## COMMONWEALTH vs. GLEN F. FARMER & others.

Suffolk.   June 20, 1914. — September 10, 1914.

Present: RUGG, C. J., HAMMOND, BRALEY, DE COURCY, & CROSBY, JJ.

*Constitutional Law,* Right to clear statement of charge in indictment, Right not to testify. *Larceny. Pleading, Criminal,* Indictment. *Evidence,* Of intent, Presumptions and burden of proof, Circumstantial. *Practice, Criminal,* Conduct of trial. *Words,* "Steal."

The word "steal" as used in an indictment for larceny under the short form set forth in R. L. c. 218, has become a term of art and includes the criminal taking of personal property either by larceny, embezzlement or false pretenses.

Article 12 of the Declaration of Rights requires in an indictment for larceny only such particularity of allegation as may be of service to the defendant in enabling him to understand the charge and prepare for his defense, and, where the statutory form of indictment is used, this right is sufficiently protected by R. L. c. 218, § 39, providing for a bill of particulars in case the defendant desires more specific information as to the crime which he is alleged to have committed.

There is nothing in the provisions of R. L. c. 218 in regard to the form of an indictment for larceny by false pretenses that violates any right secured by the Fourteenth Amendment or any other provision of the Constitution of the United States.

On an indictment for larceny from a certain woman, it appeared that the defendant induced the woman to give him large sums of money amounting to more than $80,000 for certain sets of books, of which the total value was less than $5,000,

by means of representations, including a statement that he could sell one of the sets of books for $75,000, and a later statement that he had sold the set of books for that amount to a Chicago man whose name he said he could not disclose. It further appeared that the defendant and his associate gave false names and addresses, so that no trace might be found of them, and that the defendant made a statement to an officer of a bank on whom the woman gave him a check or draft as to the proposed application of the money which was wholly inconsistent with his representations to the woman herself. It appeared that the woman was utterly ignorant of the subject matter and acted without the slightest advice from any one except the defendant and his associate. The presiding judge ruled that representations of the defendant as to the future and those as to the value of the sets of books did not constitute false pretenses, but left the case to the jury, instructing them in substance that the defendant might be found guilty of making fraudulent representations as to existing facts. After a verdict of guilty, the defendant, upon the argument of his exceptions, contended that there was no evidence that the representations as to a purchaser and his agreement to buy the set of books were false to the knowledge of the defendant or that they were made with intent to defraud. *Held,* that upon the circumstances shown, including those stated above, the jury were warranted in finding that there was no such customer and no such agreement and that the representations of the defendant were fraudulently false.

At the trial of an indictment for larceny by false pretenses whereby a certain woman was induced to pay large sums of money for sets of books of little value by representations of the defendant that he could sell one of the sets for a large sum of money named and that a certain man had agreed to pay that sum, it is proper to admit evidence tending to show that, about two years before the beginning of the defendant's transactions with the woman alleged to have been defrauded, he had made to two other persons false representations of a kindred nature in regard to the sale of extremely valuable publications to persons of great wealth, the testimony being limited strictly by proper instructions of the presiding judge to the issue of the defendant's intent in his representations made to the woman alleged to have been defrauded.

On an indictment for larceny by obtaining money from a certain person by false and fraudulent representations, it is not necessary to show, in order to convict the defendant, that the fraudulent representations made by him were the only influence operating upon the mind of the person in question to induce him to give up the money. It is enough to show that the fraudulent representations made by the defendant were a decisive influence to that end.

At the trial of an indictment for larceny by false pretenses, the district attorney during his closing argument said, "Now, because the defendants do not take the stand no presumption, the law says, is to be taken against them. . . . I will say again, the law places a cloak over these defendants and does not oblige them to take the stand." The presiding judge instructed the jury accurately and fully as to the right of the defendants not to testify and told them that no adverse inferences could be drawn from the defendants' failure to become witnesses, and also instructed them correctly as to the proper scope of the arguments of counsel and the significance to be attached to such arguments. *Held,* that, although the argument of the district attorney seemed to have gone rather far, it was within the discretionary power of the judge in the conduct of the trial not to interrupt the argument, and that the rights of the defendants were protected fully by the instructions of the judge.

At the trial of an indictment for larceny by false pretenses, the presiding judge instructed the jury, that, in deciding whether or not they were satisfied beyond a reasonable doubt that the pretenses were false, they might draw, without direct evidence to that effect, such inferences as they thought ought to be drawn and as they were "satisfied beyond a reasonable doubt should be drawn," and further instructed them that they might draw such inferences as they felt "compelled to draw as reasonable men." *Held,* that these instructions, when taken in connection with the charge as a whole, were not too broad and were accurate as applied to the evidence and the issues.

RUGG, C. J.   These are indictments against the several defendants for larceny and conspiracy to commit larceny.   The defendants Powers and Rosenfield were found guilty upon one count charging larceny of $3,000 from Mary L. Rogers.   The same defendants were found guilty on an indictment charging a conspiracy to commit larceny from Mrs. Rogers.   The defendants Farmer and Rosenfield were found guilty upon one count charging larceny of $19,000 from Mrs. Rogers.   The defendant Rosenfield was found guilty upon six other counts charging larceny of large sums of money from Mrs. Rogers.

1. The defendants seasonably filed motions to quash on the ground that the form of the indictments in each count violated their rights under the Constitution of the Commonwealth and that of the United States.   The indictments in all the counts followed the short forms set forth in the criminal pleading act. R. L. c. 218.   The constitutionality of the statute in this respect has been sustained in several decisions.   It now is unnecessary to do more than summarize the conclusions reached.   The word "steal" used in the indictment for larceny has become a term of art and includes the criminal taking of personal property either by larceny, embezzlement or false pretenses.   The Constitution of Massachusetts, article 12 of the Declaration of Rights, requires only such particularity of allegation as may be of service to a person charged with crime in enabling him to understand the charge and prepare his defense.   The provisions of R. L. c. 218, § 39, require a bill of particulars setting out adequate details where the indictment alone does not sufficiently inform the defendants, and this as matter of right.   The motion to quash was overruled rightly. *Commonwealth* v. *Kelley*, 184 Mass. 320. *Commonwealth* v. *Sinclair*, 195 Mass. 100.   *Commonwealth* v. *Bailey*, 19? Mass. 583.   *Commonwealth* v. *King*, 202 Mass. 379.

2. The defendants have not pointed out the provision of the Federal Constitution under which they contend that their rights have been infringed. It has been decided repeatedly that articles 5 and 6 of the amendments do not apply to powers exercised by the States. *Edwards* v. *Elliott,* 21 Wall. 532. *The Justices* v. *Murray,* 9 Wall. 274. It seems too plain for argument that this statute violates no rights secured by the Fourteenth Amendment or any other provision of the Constitution of the United States.

3. The material representations relied upon by the Commonwealth as having been made by one or more of the defendants and as having induced Mrs. Rogers to give to the defendants or some of them very large sums of money aggregating more than $80,000, related to the character of certain sets of the works of Shakespeare and of other authors and to the price which customers therefore already had agreed to pay for them. There was evidence tending to show that the defendant Powers, giving the false name of Clark, called upon Mrs. Rogers and referred to a set of Shakespeare, which afterwards he brought to her, saying that "it was a very rare set and if she would take them and keep them during the summer he would sell them for her in October. . . . I can get $75,000 for that set of Shakespeare . . . he said there were ten or twelve sets of Shakespeare that went together; that there was one set that they were unable to get; and that if they could get the whole sets he could sell them for $75,000." Later the defendant Rosenfield called at Mrs. Rogers' house saying, "I come from Mr. Clark [the name falsely given by Powers] in regard to the Shakespeare set. He said, there was one series missing and I have succeeded in finding it, but I found it in manuscript form, in loose sheets, and Mr. Powers [Mr. Clark] says that you will pay for the binding of it and that it would go right in with your set." He said further that there were ten sets of these Shakespeare and that he "could sell the whole set for $75,000. I have a customer who will pay it. I am collecting a set for a millionaire in Chicago who is building a handsome house and wants a handsome library, and he has commissioned me to get it for him. . . . I can put those books right into that library and you can get $75,000 for them." Still later when he came to get more money Rosenfield said "he had sold the books to the Chicago man; that she asked him the name of the Chicago man, and he said he

could n't tell his name as he was doing business through the man's agent, by the name of Gilman, but he said that he had sold all the books to that man for $250,000." Other representations of the same general nature were made. The judge * ruled that representations relating to the future and those as to value of the sets of books did not constitute false pretenses. But he left the cases to the jury with instructions in substance that the defendants might be found guilty of making fraudulent representations as to existing facts.

The defendants contend that there is no evidence that the representations as to a purchaser and his agreement to buy the books were false to the knowledge of the defendants and made by them with intent to defraud, and hence that no crime was proved. There was evidence that the total value of the books sold to Mrs. Rogers was less than $5,000. No question can be raised that these representations were not material or were not calculated to deceive, or that they did not induce Mrs. Rogers to part with her money. There was no explicit testimony to the direct effect that there was no such customer and that no such agreement was made. In the nature of things it would be difficult to prove the negative of such representations by positive evidence. These representations showed on their face inherent indications of improbability. When brought to the test of common sense they appear fantastical and visionary. They challenge the credulity of ordinary people and hardly could impose upon persons of experience and poise. All the circumstances point to the perpetration of a gross fraud in securing such extraordinary sums of money by entire strangers from a woman who was utterly ignorant of the subject matter and who acted without the slightest advice from any one aside from the defendants.

There were other incidents which indicated a scheme of impostors. The defendants gave false names and false addresses, so that no trace might be found of them. Rosenfield made a statement to an officer of the bank on which Mrs. Rogers gave him a check or draft as to the proposed application of the money wholly inconsistent with the representations made to Mrs. Rogers. These circumstances should be considered together and not

---

* *Chase,* J.

separately in order to determine the falsity of the representa-
tions. Treating them collectively there was enough to warrant
the jury as rational men in concluding that these representations
were fraudulently false and that there was no such customer and
no such agreement. *Commonwealth* v. *Howe*, 132 Mass. 250.
*Jules* v. *State*, 85 Md. 305. While some representations were
promissory only, others were positive statements of existing facts
of a nature calculated to influence the conduct of such a person
as Mrs. Rogers. There was no error in submitting this matter
to the jury.

4. Evidence was admitted against the exception of the defend-
ant Farmer tending to show that within about two years before
the beginning of his relations with Mrs. Rogers, Farmer had made
to two other persons false representations of a kindred nature
touching the sale of extremely valuable publications to persons
of great wealth. This testimony was limited strictly to the issue
of Farmer's intent in his personal transactions with Mrs. Rogers.
The principle of law governing the introduction of evidence of
this kind has been discussed with fullness and accuracy in *Com-
monwealth* v. *Jeffries*, 7 Allen, 548, and in *Commonwealth* v. *Jack-
son*, 132 Mass. 16. Summarily stated it is that it is not competent
to show one crime committed by a defendant for the purpose of
proving that he committed another distinct crime. Guilty con-
duct in one instance does not follow from like conduct on another
occasion. Moreover, it is not fair that a defendant should be
called upon in the course of a trial to exonerate himself from
offenses not charged against him in the indictment. But commonly
it is necessary to prove a particular intent as an essential ingre-
dient of the crime alleged. The thought of the human mind is
not capable of direct observation. It can be determined only
from external signs and from the knowledge the person is proved
to possess. Some offenses are not so plain and distinct and so
connected with visible facts that the accompanying intent can
be inferred without further aid. Obtaining money or property
by fraudulent pretenses under some conditions belongs to this
class. Conduct of one on another occasion reasonably near in
time under similar circumstances if appearing to be parts of a
comprehensive scheme by which different persons are to be de-
frauded, may have an important bearing upon his purpose in

doing a particular act. *Commonwealth* v. *Stuart*, 207 Mass. 563, 568, *Commonwealth* v. *Dow*, 217 Mass. 473, and cases cited in each opinion. *King* v. *Boyle*, [1914] 3 K. B. 339, 347. *Makin* v. *Attorney General*, [1894] A. C. 57, 65. This principle was not narrowed by the decision nor by anything said in *Noyes* v. *Boston and Maine Railroad*, 213 Mass. 9. Although the facts bring the present case close to the line, no reversible error is shown in admitting the evidence. It had some tendency to show a fraudulent intent on the part of Farmer.

5. The request of the defendant Powers that if the jury were satisfied that the representations made by him to Mrs. Rogers, to the effect that there was one missing set of Shakespeare, would not have induced her to part with her money if it had not been combined with the representation as to the value of $75,000 for the sets together, was refused rightly. It is enough to constitute the crime of obtaining money by false pretenses and thus of larceny under the statute if the fraudulent representation was a decisive although not the sole influence operating upon the mind of the person to induce the giving up of money. Other statements or considerations not amounting to false pretenses may co-operate to that result without impairing the force of the criminal act. *Commonwealth* v. *Drew*, 19 Pick. 179, 183. The false statement of fact embodied in the request was not the only one for which the defendant Powers might have been found to have been responsible. Mrs. Rogers may have been induced also by the representation of Rosenfield that he had a customer for the complete set at $75,000. If the jury found that Powers and Rosenfield were acting with a common design to defraud, Powers would have been bound by that statement made by Rosenfield. The jury were told plainly that Powers was not to be convicted unless Mrs. Rogers parted with her money by reason of false representations fraudulently made by the defendants and the distinction between statements of past or present facts and of opinions, promises and prophecies was explained with accuracy.

6. The district attorney during his closing argument said: "Now, because the defendants do not take the stand no presumption, the law says, is to be taken against them. . . . I will say again, the law places a cloak over these defendants and does not oblige them to take the stand." Seasonable objection was made

to this statement. The judge instructed the jury accurately and fully as to the rights of the defendants not to testify and that no adverse inferences could be drawn from their failure to become witnesses, and as to the proper scope of the arguments of counsel and the significance to be attached to such arguments. There was no error in this respect. The principle of the common law secured by the Constitution that one charged with crime cannot be compelled to testify in any prosecution against himself, and that his failure to avail himself of the statutory privilege of becoming a witness cannot be permitted to create any inference against his innocence, is guarded sedulously. The argument of the district attorney seems to have gone rather far. But something must be left to the discretion of the judge in the conduct of the trial. A mere reference in argument by the district attorney to this principle of law when correctly stated and without prejudicial color or setting is not error if accurate instructions are given fully to protect the rights of the defendant. But the trial judge must be jealous to see to it that any such reference is made fairly and in such way that in fact no prejudice shall come to the defendant. The subject was considered at length in *Commonwealth* v. *Richmond,* 207 Mass. 240, 247–250, where many of the authorities now relied on by the defendant as well as our own decisions were reviewed. The law of this Commonwealth as there restated shows that the charge protected the rights of these defendants.*

---

* The charge upon this point was as follows: "I have already told you, I am sure, that defendants in prosecutions for crime have the privilege of taking the stand in case they desire to. That is a privilege that is given; it is not an obligation which is imposed upon them. They can or they need not take the stand. It matters not in case they decide not to take the stand what motives prompt them to come to that decision. You should not speculate in your minds as to the reason why they did it. If that is the situation, if the testimony closes without the defendants having taken the stand, you are to consider that they are disqualified from taking the stand, from some reason or other. The situation, so far as your duty is concerned, is exactly as if they could not get from the place where they sit at the bar to this stand, and as if there was some reason which prevented them from getting up here. You have got to take this case and decide it entirely aside from that fact. Of course, they did not take the stand. That, of course, is apparent before your eyes. But I say that is a right which the law gives them. They may decline to take the stand and no inference whatever is to be drawn against

7. The instructions that the jury, in deciding whether or not they were satisfied beyond a reasonable doubt that the pretenses were false, might without direct evidence to that effect draw such inferences from what was in evidence as they thought ought to be drawn and as they were "satisfied beyond a reasonable doubt should be drawn," and further that they might draw such inferences as they felt "compelled to draw as reasonable men," were not too broad when taken in connection with the charge as a whole, and were accurate as applied to the evidence and the issues.

Other exceptions appear not to be argued and may be treated as waived. But a careful examination of the record fails to disclose any reversible error.

*Exceptions overruled.*

The case was submitted on briefs.

*L. Marks, C. S. Hill & B. C. Bachrach,* for the defendants Farmer and Rosenfield.

*R. H. Sherman,* for the defendant Powers.

*D. V. McIsaac,* Assistant District Attorney, for the Commonwealth.

---

them by reason of the fact. A reason which is sufficient, so far as the law goes conclusive, and which you have no right to speculate upon or inquire into, has prompted them to rest upon other evidence in the case."