COMMONWEALTH *vs.* WILLARD L. MORRISON & another.

SAME *vs.* SAME.

SAME *vs.* WILLARD L. MORRISON & another.

SAME *vs.* WILLARD L. MORRISON & another.

SAME *vs.* SAME.

SAME *vs.* WILLARD L. MORRISON & another.

Suffolk. March 17, 1925. — April 16, 1925.

Present: RUGG, C.J., PIERCE, CARROLL, WAIT, & SANDERSON, JJ.

*Evidence,* Competency, Telegram, Telephone conversation. *Conspiracy. Larceny. False Pretences. Practice, Criminal,* Exceptions.

At the trial of an indictment against two defendants for conspiracy and larceny by false pretences, the Commonwealth offered in evidence certain telegrams, purported to be sent by one bearing the name of one of the defendants, and a telephone conversation held the next day between an alleged defrauded person to whom the telegrams had been sent and that defendant. The telegrams purported to come from a certain hotel in a city in another State, and there was evidence that the defrauded person instructed a telephone operator to connect him with a person of the name of the sender of the telegrams at the hotel named and thereafter talked with some one, who said he was that man and that it was he who had sent the telegrams; that later the defrauded person received $100 by telegraph in accordance with the terms of the telegram and the telephone conversation; that the defendant in question had registered at the hotel named on the date of the sending of the first telegram and had spent one night there. There was no evidence as to how long he stayed at the hotel. The telegrams and telephone conversation were admitted subject to exceptions by the defendant. The judge charged the jury not to consider such evidence unless they were convinced beyond a reasonable doubt that it was the defendant in

question who sent the telegrams and talked on the telephone with the defrauded person. *Held*, that findings were warranted that the defendant in question sent the telegrams and talked with the defrauded person on the telephone, as stated by him, and that the evidence properly was admitted.

False representations may be made in any of the ways in which ideas may be communicated.

It is not necessary, in order to warrant a conviction for larceny by false pretences, to prove by direct evidence that the representation which formed the basis of the indictment was false: it is enough if all the circumstances considered together would warrant the jury in concluding that it was untrue.

At the trial of indictments against three defendants for conspiracy to steal, larceny, and attempted larceny by false pretences, there was evidence tending to show that one defendant, a merchant in Boston, had on hand a large number of spark plugs which were unmarketable because they were of an obsolete type and which no one else in Boston had; that each of the other defendants by telegrams or by telephone or by personal interviews pretended to seek to purchase large quantities of the plugs from different dealers, who thereupon sought to procure the plugs from the first defendant, and that he in each instance effected a sale to them or attempted to do so; that, when the sales were effected, money was paid to the first defendant and the plugs were shipped C.O.D. to the addresses given by either the second or the third defendant. In the cases where the goods were shipped, they were not claimed by the consignee named and were returned to the defrauded purchaser. *Held*, that

(1) A verdict of guilty was warranted;

(2) Evidence of delivery of the plugs to the consignees was not necessary: the jury could find that the goods were returned because there was no one at the places designated to pay for and receive them;

(3) In the circumstances, it was no defence to the indictments that money was to be paid by the defrauded persons to the first defendant in accordance with the terms of contracts made with him;

(4) It was not necessary to prove that the false pretences were the only inducement to the larceny: it was enough if they were the decisive influence.

Where testimony, admitted subject to exception by a defendant at the trial of an indictment, afterwards is stricken out by the trial judge, who instructs the jury to disregard it, it must be assumed that the jury followed the instruction and that the defendants were not prejudiced, and the exception to the admission of the evidence must be overruled.

SIX INDICTMENTS, found and returned on January 6, 1923, and on February 10, 1923, charging the crimes described in the opinion.

In the Superior Court, the indictments were tried together before *Flynn*, J. Material evidence is described in the opinion. At the close of the evidence for the Commonwealth

the defendants moved that verdicts of not guilty be ordered. The motions were denied.

The defendant Morrison then asked for the following rulings:

"1. The alleged statement by the defendant George to the witness Ramsdell that he had a large order for export and desired to buy metric spark plugs to fill the same, coupled with an order for said spark plugs to be sent to 'F. J. Coggswell, Philadelphia, Pennsylvania,' was not a false pretense within the meaning of the statute and cannot be the basis of a conviction in this action.

"2. The defendants cannot be convicted unless the government proves beyond a reasonable doubt that the metric spark plugs alleged to have been bought by the defendant George were actually delivered to the address alleged to have been given to the witness Ramsdell.

"3. There is no evidence that the metric spark plugs alleged to have been bought by the defendant George were actually delivered to the address alleged to have been given by him to the witness Ramsdell.

"4. If the jury finds that the defendant George made the alleged false pretense to Ramsdell the defendants cannot be convicted if the jury further finds that in consequence thereof the said Conners entered into an agreement of purchase and sale of said metric spark plugs without further fraud on the part of the defendants George or Morrison."

The defendant Darling asked for the following rulings:

"1. The alleged statements by the defendant Darling to the witness Conners by telegram, telegraph or otherwise were not false pretenses within the meaning of the statute and cannot be the basis of a conviction in this action.

"2. The defendants cannot be convicted unless the government proves beyond a reasonable doubt that the metric spark plugs alleged to have been bought by the defendant Darling were actually delivered to the address alleged to have been given to the witness Conners.

"3. There is no evidence that the metric spark plugs alleged to have been bought by the defendant Darling were actually delivered to the address alleged to have been given by him to the witness, Conners.

"4. If the jury finds that the defendant Darling made the alleged false pretence to Conners the defendants cannot be convicted if the jury further finds that in consequence thereof the said Conners entered into an agreement of purchase and sale of said metric spark plugs without further fraud on the part of the defendants Darling and Morrison.

"5. There is no evidence that the defendant Darling conspired with the defendant Morrison to procure the complainant Conners to purchase said metric spark plugs."

The defendant George asked for the following rulings:

"1. The alleged statement by the defendant George to the witness Ramsdell that he had a large order for export and desired to buy metric spark plugs to fill the same, coupled with an order for said spark plugs, to be sent to Philadelphia, Pennsylvania, was not a false pretence within the meaning of the statute and cannot be the basis of a conviction in this action.

"2. The defendants cannot be convicted unless the government proves beyond a reasonable doubt that the metric spark plugs alleged to have been bought by the defendant George were actually delivered to the address alleged to have been given to the witness Ramsdell.

"3. There is no evidence that the metric spark plugs alleged to have been bought by the defendant George were actually delivered to the address alleged to have been given by him to the witness Ramsdell.

"4. If the jury finds that the defendant George made the alleged false pretence to Ramsdell, the defendants cannot be convicted if the jury further finds that in consequence thereof the said Ramsdell entered into an agreement of purchase and sale of said metric spark plugs without further fraud on the part of the defendants George or Morrison.

"5. There is no evidence that the defendant George conspired with the defendant Morrison to procure the complainant Ramsdell to purchase said metric spark plugs."

All the rulings above described were refused. The defendants were found guilty on all indictments, and alleged exceptions.

*J. C. Johnston,* (*E. F. Farmer* with him,) for the defendants.

*G. Alpert,* Assistant District Attorney, for the Commonwealth.

SANDERSON, J.   The defendants were tried together on six indictments.   Morrison and Darling were convicted of a conspiracy to steal property of the H. Angus Conners Corporation and of obtaining money of the same corporation by false pretences.   Morrison and George (who was indicted under the name of Coggswell in two of the cases) were convicted of conspiracy to steal property of Robert W. Ramsdell and of Joseph W. Henzler;  of obtaining money of Ramsdell by false pretences;  and of attempting by false pretences to obtain money of Henzler.   Morrison had at his place of business in Boston, a large quantity of metric spark plugs, described in various ways in the evidence, but which could have been found to be of an obsolete type and of no market value, and not carried by any one in Boston except him. Upon the testimony, the jury could have found that Darling and George entered into separate agreements with Morrison to aid him in creating an artificial demand for these spark plugs and turning them into money by fraudulently representing themselves as *bona fide* purchasers thereof.   Testimony was offered that Morrison and George were acquainted; that they had been seen together on the street and dining together near Morrison's place of business.   After his arrest, Morrison stated to an officer that he was selling spark plugs through salesmen in different parts of the State, and had sent men out to create a demand for them;  that Darling could be found at Barre, New Hampshire, where everybody knew him; and that George was a neighbor of his.

The H. Angus Conners Corporation was a dealer in hardware in Boston; its business, so far as material to this case, being transacted by H. Angus Conners.   Several months before October, 1922, Morrison recommended these spark plugs to Conners and sold him a few.   On the morning of October 18, 1922, Conners received a typewritten communication on a telegraph blank dated New Haven, Connecticut, October 17, 1922, in the following form: "Have traced Government bar point spark plugs as coming from you.   Can you supply Bethlehem, metric, with No. 775 core and ball top.

Can pay 25 cents. Have you any Ponzet plugs? Wire me at Hotel Volk, New Haven, Connecticut at once. L. Darling." Thereafter Conners saw Morrison and learned that he could supply these plugs at sixteen cents each, but before Conners communicated with Darling he received the following telegram: "October 18, 1922. Will you send 1,500 Bethlehem and 1,500 Ponzet to Plattsburg, New York, if I send you at once $100 deposit, balance to be C. O. D. bank draft. Subject to examination on arrival. If so, notify me at once. Am in marine business and have plugs sold there but must deliver goods to people in small lots, 50 to 100. If you cannot ship this week can't use the same. Am ready to leave now. Awaiting your reply. Wire at once. L. Darling." On the evening of October 18, 1922, Conners instructed the telephone operator to connect him with L. Darling, Hotel Volk, New Haven, Connecticut, and shortly thereafter talked with a man who said he was Lou Darling and was the man who had telegraphed about the spark plugs. Conners agreed to sell and the man at the other end of the line agreed to buy three thousand spark plugs for twenty-five cents each, in accordance with the telegram. On October 19, Conners received $100 by telegraph and, after telling Morrison the price at which he was selling the plugs, asked him to take the $100 and ship the goods direct to L. Darling, Plattsburg, but Morrison refused and insisted on having the whole in cash. Conners then paid Morrison $480 and shipped the plugs C. O. D. American Express, to Lou Darling, Plattsburg, New York, where they remained about two months and were then returned to Conners. When Morrison was told that the plugs had not been called for, that they were about to be sold for demurrage charges, and that Conners had ordered them returned to him, he said that it was all right; that he had sold a lot of them and there would be no trouble in finding a market for them. He also said, in reply to inquiry by Conners, that he did not know L. Darling.

The telegrams and telephone talk were properly admitted. There was uncontradicted testimony that the name and address "L. Darling, Lewiston, Maine," in the register of the hotel were written by the defendant Lou Darling on

October 17, 1922; that the man so registering was assigned a room, and spent one night at the hotel; that he was not registered for a second night, but the witness was unable to state the time when he left the hotel. In *Commonwealth* v. *Harris*, 232 Mass. 588, the only evidence of identification was the representation made by the person calling over the telephone. In the case at bar, L. Darling was the person being called to the telephone at a hotel where, according to the telegram, a man by that name could be reached and where the defendant Darling had registered. The circumstances were sufficient to justify a finding that it was the defendant who was speaking. The jury were instructed not to consider the telegrams or the telephone conversation unless convinced beyond a reasonable doubt that the defendant Darling sent the former and participated in the latter.

False representations may be made by acts as well as words. G. L. c. 277, § 39. They "may be made in any of the ways in which ideas may be communicated." *Commonwealth* v. *Drew*, 19 Pick. 179, 185. *Rex* v. *Barnard*, 7 Car. & P. 784. A misrepresentation as to a person's present intention may be a false pretense. *Commonwealth* v. *Walker*, 108 Mass. 309. *Donovan* v. *Clifford*, 225 Mass. 435. When a person enters into a contract to buy goods, he impliedly represents that he intends to make a genuine contract; if such is not his intention, he may be found to have made a false representation. *Commonwealth* v. *Stone*, 4 Met. 43. *Commonwealth* v. *Harley*, 7 Met. 462. *Commonwealth* v. *Walker*, *supra*. In such a case the intention not to pay for the goods is merely incidental; the false pretense is the assumption of a false character as a contracting party. The facts in *Commonwealth* v. *Althause*, 207 Mass. 32, make it inapplicable to the case under consideration. Moreover, there were additional facts which would justify Conners in believing that Darling was making a genuine contract. A deposit of $100 was made, the balance to be collected when the goods were delivered; and the telegram indicated that the buyer was in pressing need of the plugs to fill orders. It is not necessary to have direct evidence that a representation was false. It is enough if all the circumstances considered to-

gether would warrant the jury in concluding that it was untrue. *Commonwealth* v. *Farmer*, 218 Mass. 507.

Upon the testimony the jury could have found that the defendant Darling gave a fictitious order for spark plugs, which were of little or no value, for the purpose of inducing Conners to part with his money to Morrison with whom Darling was in collusion. *Commonwealth* v. *Mulrey*, 170 Mass. 103. Men are presumed to intend the natural consequences of their own acts. *Commonwealth* v. *Hersey*, 2 Allen, 173, 174. If two parties are working with a common purpose to obtain the money of another by false pretences, both are criminally liable. "The act of one was the act of both. *Commonwealth* v. *Harley*, 7 Met. 462." *Commonwealth* v. *Mulrey*, 170 Mass. 103, 110.

On October 28, 1922, the defendant George brought a metric spark plug to the store of Joseph W. Henzler, a dealer in automobile accessories, and asked him if he could supply plugs like the sample. Henzler told him to leave it and call the next day. Henzler then saw Morrison, who told him he could supply them at sixteen cents each. Later George ordered two thousand plugs at twenty-five cents each, paid $50 on account, and instructed Henzler to ship them C. O. D. to "F. S. George, Portland Maine, by American Express." When asked for his address, George declined to give it. Later Henzler asked Morrison to ship the plugs C. O. D. but he refused to do it, stating that it must be a cash transaction; whereupon Henzler refused to complete the purchase. About three hours later George notified Henzler that he had bought the plugs elsewhere, cancelled his order, and asked for the return of his deposit.

In December, 1922, Morrison tried to sell some of the spark plugs to Ramsdell, and prevailed upon him to take a few samples, saying "Somebody may drop in and be interested in them." Within a few weeks the defendant George, giving his name as F. J. Coggswell, called upon Ramsdell with a sample plug and asked if he had any like it. Upon being shown the one Ramsdell had received from Morrison, he said he wanted to purchase a large quantity of them. Ramsdell, after communicating with Morrison and finding

that he could buy them from him at twenty-four cents apiece, agreed to sell seventeen hundred to George at forty cents each. George sent Ramsdell a cash deposit of $68 on his purchase, and ordered the goods shipped to F. J. Coggswell, Philadelphia, Pennsylvania, by American Express, balance C. O. D., and, when asked for his address, said he could be reached at the Continental Hotel, Philadelphia, Pennsylvania. Morrison insisted on receiving cash from Ramsdell, who paid him $408 for the plugs, which were shipped to the address and in the manner directed by George. Ramsdell several times inquired of the express company about the goods but received no payment for them and, in about two weeks, they were returned to him.

From the foregoing recital of facts the jury could find that the defendants Morrison and George were in a conspiracy to defraud, as alleged in both indictments; that the contracts which they purported to make with Ramsdell were not genuine; that Ramsdell parted with his money to Morrison relying on the truth of the representations made to him; and that the defendants were guilty of obtaining money by false pretences.

In the Henzler case the jury had a right to consider the Ramsdell transaction on the question of the defendants' intent; they could have found that George had performed his part of the plan by pretending to buy the plugs, making a deposit, and giving directions for shipment; and that Morrison was endeavoring to perform his when the accomplishment of his purpose was prevented by Henzler's refusal to pay cash for the goods. The parties had gone far enough by their overt acts to warrant a finding of criminal attempt. *Commonwealth* v. *Peaslee,* 177 Mass. 267.

For reasons hereinbefore stated, the defendants' motions for directed verdicts were properly denied. Their requests for rulings also were rightly refused. The first related to the alleged false pretence and has been sufficiently considered. The second and third related to failure to prove delivery of the plugs to the addresses given. There was ample evidence to warrant the jury in reaching the conclusion that the alleged crimes were committed, without further evidence

concerning delivery by the express company. In view of the testimony that George gave Ramsdell a fictitious name and had the goods sent to a city distant from his home without designating street or number, that Darling's home address, according to the hotel register, was Lewiston, Maine, while the goods were ordered shipped to him at Plattsburg, New York, that in one of the cases the goods were being held for demurrage charges, and that neither, so far as appears, made complaint about the nondelivery of the goods, the jury could find that the goods were returned because there was no one at the places designated to pay for and receive them.

It is no defence to these indictments that the Conners company and Ramsdell paid their money to Morrison in accordance with the terms of contracts made with him, under the circumstances disclosed. It could still be found that the money was obtained by Morrison as a direct result of the false pretences of Darling and George, made in pursuance of a prearranged fraudulent scheme of which the contract made with Morrison could have been found to be a part and was, therefore, of no validity.

It is not necessary to prove that the false representation was the only inducement; it is enough if it was a decisive influence. *Commonwealth* v. *Farmer, supra.* The remaining requests have been sufficiently covered in the foregoing discussion.

Testimony was admitted of what purported to be a telegram partly in code from someone by the name of Morrison to someone by the name of Darling. Later this testimony was stricken out and the jury told to disregard it. It must be assumed that the jury followed the instructions and that the defendants were not prejudiced. *Commonwealth* v. *Scott,* 123 Mass. 222. *Commonwealth* v. *Ham,* 150 Mass. 122. *Clark* v. *Boston & Maine Railroad,* 164 Mass. 434, 439.

The portion of the charge objected to, taken in connection with the whole charge, was an accurate statement of the controlling principles of law which should govern the jury in deciding whether the crime of obtaining money by false pretences had been committed.

*Exceptions overruled.*