COMMONWEALTH *vs.* JOSEPH STEINBERG.

Hampshire.   September 19, 1928. — November 23, 1928.

Present: RUGG, C.J., PIERCE, CARROLL, WAIT, & SANDERSON, JJ.

*Larceny*, By false pretence.   *Evidence*, Competency, Failure to produce.

Under an indictment charging that the defendant stole a bow-knot bar pin of the value of $1,000 from a certain person, the Commonwealth specified that the alleged larceny was committed in obtaining the pin by oral misrepresentations made by the defendant that he had a customer by the name of B to whom he thought he could sell the pin; "and because the pin was delivered to the defendant on memorandum or consignment, so called, and the defendant had converted the brooch to his own use."   There was evidence that the pin at the defendant's request was delivered by the owner to the defendant on consignment to show to one B to whom the defendant hoped to sell it, that there was no such person as B, and that the defendant had no such customer; that this was a mere scheme, invented by the defendant with the intent to defraud the owner, and was a fraud practised on him; and that, considering the value of the pin and the

business of the defendant and the way in which it was conducted, the owner parted with the property because of the fraudulent representations practised on him. B was not called as a witness. *Held*, that

(1) It was sufficient to make out the offence of obtaining the pin by false pretences, if the fraudulent representation was a decisive although not the sole influence operating on the mind of the owner to induce him to give up the article;

(2) The failure of the defendant to produce B as a witness was for the jury to consider, and they could give weight to this circumstance;

(3) A statement by the defendant to the owner, that "my customer is interested, and I wouldn't want a day or two to spoil a sale," made two days after the expiration of a date when, by the terms of the consignment agreement, the pin should have been returned to the owner, was competent evidence;

(4) It was proper to admit testimony by a member of the State police that, while he was at the home of a bookkeeper of the defendant thirteen days after bankruptcy of the defendant, and without the defendant's knowing that he was present, he overheard the defendant say to the bookkeeper, "Has . . . [the witness] been to see you? . . . If they come up here asking you any questions about my business, you don't know anything about my business. If they come here, you order them right out of the house. . . . You take and hit them right over the head with that bottle. That's what I would do to them";

(5) The evidence, tending to show that the defendant obtained the pin by false pretences and appropriated it to his own use, was sufficient to show that, with fraudulent intent, he criminally converted the property of the owner.

INDICTMENT, found and returned on March 2, 1927, charging that the defendant on April 15, 1926, at Northampton "did steal one bow-knot bar pin of the value of $1,000 of the property of one Joseph M. Lansky."

Oral particulars furnished by the Commonwealth are stated in the opinion.

The indictment was tried before *Irwin*, J. Material evidence is described in the opinion. The defendant asked for the following rulings:

"1. Upon all the evidence the jury should find the defendant not guilty.

"2. There is no evidence of any actual misrepresentation by words used by the defendant.

"2a. There is no evidence that any representation, made by the defendant at the time the arrangement was made for the sending of the bar pin was false.

"3. If at the time the arrangement was made for the sending of the bar pin the defendant made no misrepresentation, then there could be no larceny by false pretense.

"4. If the defendant arranged with Lansky that he should send him notes and did send him notes for this bar pin, then the jury should find him not guilty."

"6. Upon the memorandum introduced by the government, it appears that the defendant was not to pay at once for the merchandise if he decided to keep it, but merely to notify Lansky and Lansky would then send him a bill for it.

"7. If the defendant did notify Lansky that he intended to keep the bar pin before bankruptcy, then title passed to the defendant even if he did not send notes for it, and so there could be no larceny."

The fourth request was granted in substance, as stated in the opinion. As to the seventh request, the judge stated to the jury that it "is good law." The others were refused. The defendant was found guilty and alleged exceptions.

*D. R. Radovsky,* (*O. Grife* with him,) for the defendant.

*C. Fairhurst,* District Attorney, for the Commonwealth.

CARROLL, J.   The defendant was found guilty upon an indictment for larceny of a bar pin, valued at $1,000, from one Lansky. To the defendant's request for specifications the Commonwealth orally answered that the alleged larceny was committed in obtaining the pin by oral misrepresentations made by the defendant that he had a customer by the name of Mrs. Baker to whom he thought he could sell the pin; "and because the pin was delivered to the defendant on memorandum or consignment, so called, and the defendant had converted the brooch to his own use."

Lansky testified that he was in business in Boston as a wholesale jeweler; that he first saw the defendant when he called at his (Lansky's) place of business in February, 1926; that at this time the defendant received a watch which he took on consignment; that at some time before April 14, the defendant came to Lansky's store and saw the bar pin, and he was informed that the price of the pin was $1,000; that on April 14, he called again and asked if Lansky had the pin, to which Lansky said it was "out on consignment";

that the defendant then said "that's too bad . . . You know, I have a customer by the name of Baker. She is a very, very good customer of mine. . . . I'll tell you why I say this. I was in town one day and I spied a beautiful coat . . . and I took the coat on consignment . . . and went to Mrs. Baker's . . . and there I sold her the coat, and it was premonition on my part . . . when I saw this coat that it might fit Mrs. Baker, and I think . . . Mrs. Baker would buy that pin if she likes it and I would like to take it." Lansky also testified that he said he would "try and get it" for the defendant; that the defendant called him on the telephone three or four times; that on the last occasion when called on the telephone he said to the defendant that he couldn't get "in touch with my parties"; that the defendant asked him to mail the pin to·him and Lansky said he would as soon as he received it, and on April 15 he sent it by express to the defendant at Northampton; that it was sent on a memorandum agreement which stated in effect that the pin was "Consigned on Memorandum" to "remain the property of the J. M. Lansky & Co. . . . Goods not selected to be returned in 5 days." He further testified: "I hadn't heard anything from the defendant until April 22 and I called him up. A young lady answered the telephone . . . later in the day Mr. Steinberg called me back, and he says, 'Did you call me?' I said, 'Yes.' He says in Jewish, 'You know I have got a shikseh in my office.' That is the Jewish term for a Gentile girl. 'What did you want to tell her my business for?' 'I don't like her to know my business. You know they are Gentiles and I am Jewish and I do my business my way, and the less they know, the better.'" At this interview Lansky asked for the pin and the defendant said "my customer is interested, and I wouldn't want a day or two to spoil a sale." To which Lansky said, "That's perfectly all right." On May 15 or 16 Lansky learned of the defendant's bankruptcy. The pin had not been returned or paid for.

Joseph V. Daly, a member of the State police, testified that on May 27 he went to the house of Miss Lane, the defendant's bookkeeper, and while he was there Steinberg came in. Daly went up stairs, and he heard Steinberg say

to Miss Lane: "Has Daly been up to see you? . . . If they come up here asking you any questions about my business, you don't know anything about my business. If they come here, you order them right out of the house. . . . You take and hit them right over the head with that bottle. That's what I would do to them." The witness was asked, "Did you make yourself visible at any time there to Steinberg?" He answered "No, sir."

Miss Lane, a witness for the defendant, testified that she had been a clerk in the defendant's store since October, 1925; that the defendant did a credit instalment business "which was carried on not only inside of the store, but outside in Northampton and in various cities and towns . . . as a pedlar with a truck"; that "she did not know who his customers were on the road"; that Lansky called her on the telephone and asked if Steinberg "was keeping the pin. If he wasn't keeping it to return it as he had a customer. If he was keeping it, to send him notes"; that she sent a number of notes to Lansky, "ten to fifteen, something like that" of "$150 to $200 each." On cross-examination she said she continued to work for Steinberg till May 14, 1926, the day of the bankruptcy, when the store was closed; that "We had jewelry on display in the store"; that she had no knowledge of any customer named Baker "or of a coat being sold to a Mrs. Baker." She was asked "Did he [Steinberg] tell you that you were ill and you really ought to go away?" She replied, "He didn't tell me that I was ill. He told me if I was going, it would be best to go."

It also appeared that Lansky received from Steinberg two notes, one for $150 and one for $167.36, in payment for certain silver to the amount of $17.36 and a ring the price of which was $300; these notes were discounted by Lansky but never paid. The record does not show that Mrs. Baker was called as a witness and there was no explanation of her absence. The only witness for the defendant was Miss Lane.

Whoever "with intent to defraud, obtains by a false pretence . . . the . . . personal chattel of another . . . shall be guilty of larceny." G. L. c. 266, § 30. There was evidence for the jury that the defendant, with an intent to

defraud, by means of a false pretence obtained the bar pin from Lansky. The jury could find that there was no such person as Mrs. Baker, that Steinberg had no such customer, and had never sold a coat to her; that this was a mere scheme, invented by the defendant with the intent to defraud Lansky, and was a fraud practised on him; that, considering the value of the pin and the business of Steinberg and the way in which it was conducted, Lansky parted with the property because of the fraudulent representations practised on him. *Commonwealth* v. *Drew*, 19 Pick. 179. It was sufficient to make out the offence of obtaining the pin by false pretences, if the fraudulent representation was a decisive although not the sole influence operating on the mind of Lansky to induce him to give up the article. *Commonwealth* v. *Farmer*, 218 Mass. 507, 513. *Commonwealth* v. *Morrison*, 252 Mass. 116, 122.

The failure of the defendant to produce Mrs. Baker as a witness was for the jury to consider, and they could give weight to this circumstance. "A failure to explain what can be reasonably explained may be taken as evidence that the truth would not help the defendant." *Commonwealth* v. *Spencer*, 212 Mass. 438, 451. The defendant's statement to Lansky on April 22 that "my customer is interested, and I wouldn't want a day or two to spoil a sale," was competent for the consideration of the jury, as well as were his remarks to Miss Lane.

G. L. c. 266, § 30, provides that "Whoever . . . with intent to defraud, obtains by a false pretence, or whoever unlawfully and, with intent to steal or embezzle, converts . . . with intent to convert, the . . . personal chattel of another . . . shall be guilty of larceny." "In an indictment for criminal dealing with personal property with intent to steal, an allegation that the defendant stole said property shall be sufficient; and such indictment may be supported by proof that the defendant committed larceny of the property, or embezzled it, or obtained it by false pretences." G. L. c. 277, § 41. The evidence tending to show that the defendant obtained the pin by false pretences and appropriated it to his own use was sufficient to show that, with fraudulent intent, he criminally converted the property of Lansky.

The defendant requested the ruling: "If the defendant arranged with Lansky that he should send him notes and did send him notes for this bar pin, then the jury should find him not guilty." This ruling was given by the trial judge; he said to the jury, ". . . if Lansky gave credit to Steinberg and accepted Steinberg's notes in payment for the indebtedness incurred, then the defendant is not guilty." There was no error in refusing to give the remaining requests. The evidence excepted to was admissible and there was no harmful error in the instructions given.

*Exceptions overruled.*