## COMMONWEALTH *vs.* JAMES MALONEY.

Upon a trial for the keeping of intoxicating liquors with intent to sell them, the only evidence to connect the accused with the offence was the fact that he was seen in a room adjoining the bar room in which the liquors were. *Held,* that he was not called upon to explain his presence there; that the benefit of the provision of St. 1870, *c.* 393, § 1, that "his neglect or refusal to testify shall not create any presumption against him," was to be preserved to him in spirit as well as in letter; and that, therefore, the reading by the court to the jury of a charge, given in another case upon a different state of facts, as to the inference of guilt that may be drawn from a failure to offer explanatory evidence when it is apparent that, if it be true, such evidence is within the power of the accused, was erroneous as tending to mislead the jury, although qualified by the statement that the evidence which it must be apparent he can produce must be evidence other than his own testimony.

COMPLAINT charging the defendant with keeping intoxicating liquors with intent to sell the same in violation of law.

At the trial, upon appeal, in the Superior Court, before *Pitman,* J., the single witness in the case testified that, as a state constable, he went, with a warrant to make search for intoxicating liquors, to the place designated in the warrant; that it was a two-story wooden building, near the corner of Main and Winthrop streets, in Taunton; that he entered the first room from the street, and saw the defendant standing there in his shirt sleeves that he then passed to the next adjoining room, where he found a bar and all the "paraphernalia" of a bar room, with various kinds of intoxicating liquors behind the bar, and the "implements of sale;" that he had not seen the defendant there during that day nor at any other time during the fortnight previous; that he, the witness, had not been there during that fortnight; that he did not know whether the defendant left the room where he first saw him while he, the witness, was there and engaged in removing the liquors; that the defendant was the only person present when

he entered, and that he thought other persons came in while he was there, but of this he was not certain.

This was all the material evidence in the case, and the defend-ant neither testified himself nor called witnesses, but demurred to the evidence, and requested the judge to instruct the jury that there was not sufficient evidence to warrant them in finding the defendant guilty.

This the judge refused to do, but read to the jury a portion of the charge of Chief Justice Shaw in *Commonwealth* v. *Webster*, 5 Cush. 316, adding to it, as he read it, the clauses in brackets : " Where, for instance, probable proof is brought of a state of facts tending to criminate the accused, the absence of evidence tending to a contrary conclusion is to be considered, though not alone entitled to much weight ; because the burden of proof lies on the accuser to make out the whole case by substantive evi-dence.   But when pretty stringent proof of circumstances is pro-duced, tending to support the charge, and it is apparent that the accused is so situated that he could offer evidence [besides his own testimony] of all the facts and circumstances as they existed, and show, if such was the truth, that the suspicious circumstances can be accounted for consistently with his innocence, and he fails to offer such proof, [besides his own testimony,] the natural con-clusion is, that the proof, if produced, instead of rebutting, would tend to sustain the charge.   But this is to be cautiously applied, and only in cases where it is manifest that proofs [other than his own evidence] are in the power of the accused, not accessible to the prosecution."   The judge then cautioned the jury that the defendant's neglect or refusal to testify should not create any pre-sumption against him ; that the statute giving him the right to testify made that provision, and that they were to regard it.

The defendant's counsel, before the jury retired, excepted to that portion of the charge read from the volume of reports, upon the ground that it was not applicable to the case ; but the court refused to modify the charge in any part.

The jury returned a verdict of guilty, and the defendant al-leged exceptions.

*J. Brown*, for the defendant.

*C. R. Train*, Attorney General, for the Commonwealth.

WELLS, J. Unaided by any inference from the defendant's silence, or his omission to produce evidence to explain the circumstance, the mere fact of his being in the room adjoining and opening into that in which the liquors were kept, and in his shirt sleeves, does not seem to us to furnish that fulness of proof which is required to remove all reasonable doubt in criminal cases. He might have been a mere loiterer, or a neighboring customer, equally unsuccessful as the officer in an attempt to find the keeper of the place. But as the narration of the facts at the trial may have given them an appearance of more significance than they bear in the written statement, we are not prepared to say that the evidence as exhibited to the jury was not legally sufficient to warrant the verdict.

We think, however, that the instructions given to the jury were calculated to induce them to give undue force to the evidence, if not to disregard the spirit of the statute which forbids any presumption to be drawn against a defendant in criminal proceedings, from his neglect or refusal to testify.

Instructions, legally correct in themselves as independent propositions, or as applied to an appropriate state of facts, are erroneous if applied to a state of facts to which they are not adapted. *Pond* v. *Williams*, 1 Gray, 630, 635. *Wright* v. *Old Colony & Fall River Railroad Co.* 9 Gray, 413. *Brightman* v. *Eddy*, 97 Mass. 478. They tend to mislead the jury either into the supposition that a proper state of facts exists to which the propositions are to be applied by them, or into drawing the suggested inference from facts which do not authorize it.

We do not see that the proof offered by the Commonwealth fairly put the defendant to any explanation except such as would require his own personal testimony. On the supposition of his innocence, the fact of the real ownership of the place was not more accessible to him than to the Commonwealth; and it was for the Commonwealth, and not for him, to produce the proof, if it bore on the issue. The same is true of the question who was the real keeper of the place, or the regular occupant of the premises.

The result would naturally follow, especially upon minds un‑ trained to careful distinctions, that the instructions would be applied to the case, and the inference thus suggested would be drawn against the defendant without any clear apprehension of the precise conditions which would warrant such an inference. The statute is explicit; and the exemption should be scrupu‑ lously secured to the defendant. *Commonwealth* v. *Harlow*, 110 Mass. 411. It is doubtless intended to carry out the spirit and purpose of the clause in the Declaration of Rights, that no sub‑ ject shall " be compelled to accuse or furnish evidence against himself." A bare literal compliance with the terms of this pro‑ vision is not all that a defendant is entitled to. In extreme care for literal observance may lurk the unintended suggestion which leads to a violation of its spirit. Our apprehension that such may have been the effect in this case requires us to

*Sustain the exceptions.*