COMMONWEALTH *vs.* ELIZABETH RICHMOND.

Middlesex, November 14, 1910. — January 3, 1911.

Present: KNOWLTON, C. J., MORTON, LORING, SHELDON, & RUGG, JJ.

*Pleading, Criminal,* Indictment. *Homicide. Evidence,* Of motive, Presumptions and burden of proof. *Practice, Criminal,* Conduct of trial, Constitutional rights of defendant, Verdict. *Witness.*

The objection that an indictment for murder is defective, in that it is uncertain whether the assault and the murder are charged to have been committed upon one and the same person, because the word "said" does not precede the second mention of the name of the person alleged to have been murdered, even if there is anything in the point, only can be taken upon a motion to quash the indictment.

At the trial of an indictment for murder, although the Commonwealth is not required to show any motive for the commission of the crime, evidence tending to show such a motive always is competent.

At the trial of an indictment for murder, where robbery is suggested by the Commonwealth as a motive for the crime, the Commonwealth may show that shortly before the finding of the body of the deceased the defendant was pressed for money and that on the day the body was found the defendant had a "roll of

bills," that the deceased had money in his possession immediately before his death, and that no money whatever was found upon his body when discovered after his death. There here was evidence of all these things.

At the trial of an indictment for murder, where there is evidence that shortly before the killing the defendant was pressed for money and after the killing had a roll of bills, that the deceased immediately before his death had money in his possession and that none was found upon his body, and where the Commonwealth has shown that the deceased was young, active and able-bodied and had been at work for many months in a State institution in a country town, without showing the amount of his compensation, if the district attorney says in his argument to the jury that the deceased had been working for $30 a month, when there is no evidence of it, but the argument is not interrupted and no ruling is requested upon the point and no exception is taken in regard to it, it will be assumed that the defendant was not harmed by the statement in the argument of the district attorney, and he cannot afterwards complain of it.

At the trial of an indictment for murder where it is material to show the fact that the defendant was in her rooms on the evening of a certain day, evidence that the defendant the next morning made a request of a witness which showed that she must have heard a threat made in a loud voice outside her door the evening before, which tends to show that the defendant was inside the door at that time, may be admitted, although the testimony of the witness as to hearing the threat made outside the defendant's door otherwise would be inadmissible, if in admitting the testimony the presiding judges carefully limit its effect to the purpose for which it is material.

If, at the trial of a criminal case, there are inconsistencies in the testimony introduced by the Commonwealth upon a certain issue, this affects only the weight of the evidence and does not make it incompetent if it is material to the issue upon which it was admitted.

At the trial of a criminal case, if the testimony of a witness introduced by the Commonwealth upon a certain issue tends to contradict the testimony of other witnesses called by the Commonwealth, although it was not introduced for that purpose, this does not make the evidence incompetent, if it was a statement by the witness of his observations by his senses and is material to the issue upon which it was admitted.

The provisions of R. L. c. 175, § 24, permitting a party who produces a witness to contradict him by other evidence, apply to a witness produced by the Commonwealth in the trial of an indictment for murder.

At the trial of an indictment for murder, certain evidence here was held to have been excluded properly as being indefinite and bearing no relation to any issue in the case, other evidence was held to have been excluded properly as not having been made material by necessary connecting evidence and also as being objectionable in form, and certain other evidence was held to have been admitted properly in the discretion of the presiding judges upon the redirect examination of a witness for the Commonwealth to explain a certain fact brought out upon his cross-examination.

At the trial of an indictment for murder a request of the defendant that a verdict of not guilty be ordered must be refused by the presiding judges if there is evidence, which, although wholly circumstantial, warrants a verdict of guilty under proper instructions in regard to the burden of proof.

At the trial of an indictment for murder it is not a sufficient reason for ordering a verdict of not guilty, that the jury might find that persons other than the defendant had an opportunity to commit the murder.

At the trial of an indictment for murder it is not a sufficient reason for ordering a verdict of not guilty, that there are inconsistencies and contradictions in the testimony of witnesses, called by the Commonwealth, who at about the time of the murder were frequenting the house in which the murder was committed, because these matters affect only the weight of the evidence and are for the jury to pass upon.

At the trial of an indictment for murder it appeared that the murdered person was killed in a lodging and boarding house kept by the defendant, and that a number of persons were in the house during the period of time within which the murder was committed. All of these persons except the defendant were called by the Commonwealth as witnesses and each of them was asked the question whether he or she killed the murdered man and answered "No." In his argument to the jury the district attorney said, " Is there anybody in this case whose presence or absence is unaccounted for, except the one party charged with the crime ? . . . Every person but one has told you under oath that they did not kill [the deceased]. This is significant." The defendant's counsel objected, and the presiding judge said, "That will be taken care of in the charge." The district attorney continued, " You have been told that the defendant is not to be prejudiced because she did not take the stand. . . . That is the last thing in the world I shall ask of you — to infer anything from the fact that she did not take the stand. And what I have just said has no relation to that except the bare fact that everybody but she has testified under oath that they did not kill [the murdered person]." The defendant's counsel objected. The district attorney continued, " If she has in her power or control any evidence which will explain where she was [on the night the murder was committed], if she has any friends that could come here and tell you where she was, and what she was doing, if she has any means whatever of putting before you any evidence showing where she was, and she fails to do it, we are entitled to call your attention to that failure, and you are entitled to use it as you see fit. . . . If she has within her possession or control any evidence to show that she is innocent; if she has such evidence that an innocent person would produce, I am entitled to call your attention to her failure to do so; and you are entitled to consider it in this case." The presiding judge in his charge to the jury instructed them that, although the defendant was permitted to testify in her own behalf, she was not obliged to do so, and that her failure to do so did not create any presumption against her and should not prejudice her in any way. He also gave accurate instructions as to the inferences which might be drawn from the defendant's failure to call other witnesses. At the close of the charge the defendant's counsel asked the presiding judge to instruct the jury that the district attorney had no right to make the argument above quoted. The judge refused to give such an instruction, and the jury returned a verdict of guilty. *Held,* that the argument of the district attorney that every person, so far as known, except the defendant, who had had an opportunity to do the killing had testified and, if such testimony was believed, did not commit the murder, leaving only the defendant unaccounted for, was a proper one, and that by the disclaimer of the district attorney of an intent to urge any inference from the defendant's failure to testify in her own behalf, coupled with the plain instruction in the charge of the judge, the constitutional rights of the defendant were amply protected.

In a criminal case, as in a civil one, unless there is something to show the contrary, it must be assumed that the jury understood and acted upon the instructions given to them by the judge.

INDICTMENT, found and returned on September 4, 1909, charging the defendant with the murder of one Stewart MacTavish on July 23, 1909, in a house known as the Hotel Florence, at Cambridge, which was kept by the defendant as a boarding and lodging house.

In the Superior Court the defendant was tried before *Crosby* and *Dana*, JJ., and the charge to the jury was made by *Dana*, J. The jury returned a verdict of guilty of murder in the second degree; and the defendant alleged exceptions, raising the questions which are stated and considered in the opinion.

*R. W. Gloag*, for the defendant.

*J. J. Higgins*, District Attorney, for the Commonwealth.

RUGG, J.    The defendant was indicted for murder.

1. The defendant filed no motion to quash the indictment. Hence the faint suggestion now made that it is defective, in that it is uncertain whether the assault and murder are charged to have been committed upon one and the same person, because "said" does not precede the second mention of the name of the person alleged to have been murdered, is not open to her.    We do not intimate that there would be anything in the point even if seasonably presented.    The indictment followed the form prescribed in R. L. c. 218, § 67.    *Commonwealth* v. *Min Sing*, 202 Mass. 121, 132.    *Commonwealth* v. *Jordan, post*, 259.

2. One motive suggested for the commission of the crime was robbery.    A considerable amount of evidence was introduced by the Commonwealth tending to show that before the alleged homicide the defendant was heavily in debt and in need of ready money, and that immediately thereafter she had bills in her possession.    When the evidence as to the financial embarrassment of the defendant was offered, although not objected to, the jurors were instructed in substance that it was admitted only as bearing upon the motive of the defendant in the commission of the offense charged, and that in order to be material for their final consideration, " certain other evidence must appear, and if that evidence does not appear, then this evidence which is now being admitted should be disregarded."    No exception was taken, but at the close of the evidence the defendant asked for an instruction that this evidence should be disregarded.    Subject to exception, this prayer was denied, and the instruction was given

that although the Commonwealth was not required to show any motive for the commission of the crime, evidence tending to show such motive was always competent. After referring to evidence that "the prisoner was pressed for money shortly prior to the finding of the body of the deceased" and that on that day she "had a roll of bills," the judge further instructed the jurors that in order to consider the evidence at all they must be satisfied that the deceased had money in his possession immediately before his death, and thereafter the defendant had this money in her possession. These instructions were in accordance with well settled principles. *Commonwealth* v. *O'Neil,* 169 Mass. 394. *Commonwealth* v. *Williams,* 171 Mass. 461. *Commonwealth* v. *Devaney,* 182 Mass. 33. *Commonwealth* v. *Tucker,* 189 Mass. 457,.467. The chief argument urged is that there was no sufficient evidence that the deceased possessed any money shortly before his death. But this contention cannot be sustained. It might have been found that the murdered man was young, active, able-bodied, and had been at work for many months in a State institution in a country town. Although the amount of his compensation was not shown the jury might have used their general knowledge in drawing an inference in this respect. *Maynard* v. *Royal Worcester Corset Co.* 200 Mass. 1, 8. There was also evidence that he was in Cambridge for the purpose of attending the wedding of his sister, was on his way to spend a vacation in Prince Edward Island, whither he had checked his trunk and had bought a ticket, was a guest at a public house where he had given coin as a gratuity to a waiter, had manifested great care to keep near him a dress suit case, had said to a friend that he was sorry he had before asked him for money, that he had money "enough to see him through," and that no money whatever was found upon his remains. If these circumstances were found by the jury, the inference would have been warranted that the deceased had money to the amount of which the defendant was possessed after the homicide. It is argued also that there was error because the district attorney said in his argument to the jury that the deceased had been working for $30 per month when there was no evidence of it. But the argument was not interrupted, and no ruling was requested on this point, and no exception taken respecting it. Under these

circumstances, it cannot be assumed that the defendant suffered any harm of which she can now complain.

3. The presence of the defendant in her bedroom or parlor, rooms which were connected, in the early evening of a certain day, was a material fact upon the trial. Against the exception of the defendant one Hannigan was permitted to testify that she overheard one Paige while standing near the bedroom door, and after the defendant had been called without any response, say, in a loud voice, in the course of talk with a servant of the defendant in which he demanded money or some satisfaction as to a disagreement about the hire of a room, " I shall bring an officer," and that next morning the defendant asked the witness not to let Paige bring an officer, and that " there was no need of any officer being brought about the room rent." There was no evidence that the defendant learned of this threat as to an officer in any other way than by being in the bedroom or parlor at the time it was uttered and thus hearing it. The evidence plainly had some tendency to prove that she was there. It was competent to this end, and was carefully limited by the judge to this purpose. If there were inconsistencies in some details of the testimony its weight only and not its competency was affected. It is also urged that this testimony tended to contradict that given by other witnesses called by the Commonwealth. It was not introduced for that purpose, but was the direct statement of the witness of the records of her own senses. Even if pointedly contradicting other evidence, it was still competent. R. L. c. 175, § 24.

4. One Clifford, a witness called by the Commonwealth, having testified at length concerning the people in the house where the deceased met his death, and their actions and some of their conversation, and that one Drohan had said in reply to his question a short time before the lifeless body of the deceased was discovered that MacTavish was in the house, was asked on cross-examination, " When was MacTavish again mentioned by any of you ? " This question was properly excluded. It was indefinite as to persons, and appears to bear no relation to any issue in the case.

5. The chief inspector of police of Cambridge, who had been active in the investigation of the crime, was asked by the defendant

whether after the defendant was indicted he had not "procured the putting of one of the government witnesses on probation after he had pleaded guilty to a crime." There was no error in the exclusion of this inquiry unsupported by any suggestion of inducement to a definite person. It was objectionable in form. The placing on probation of one charged with crime is the independent act of the court, and cannot be "procured" by anybody.

6. It was developed by the cross-examination of one Shannon, a police officer called by the Commonwealth, that certain men in the house of the defendant were placed under arrest on the day when the body of MacTavish was found. The arresting officer was permitted to testify on redirect examination, subject to the defendant's exception, that the purpose of putting them under arrest was to hold them for witnesses. This inquiry was permissible in the discretion of the judge for the purpose of refuting any inference that they were suspected of having committed the murder.

7. Other exceptions as to evidence were taken, which have not been argued, although it is stated that none of them are waived. They have all been examined with care, and no error appears to have been committed in respect of any of them. The statements made by the defendant to the officers after her arrest appear to have been made voluntarily after a caution, and were admissible. The instructions that they could not be considered unless made freely and without inducement were ample and correct. *Commonwealth* v. *Storti,* 177 Mass. 339. *Commonwealth* v. *Killion,* 194 Mass. 153.

8. At the close of the evidence the defendant requested that a verdict of not guilty be ordered. The evidence connecting the defendant with the commission of the crime was not from any eyewitness, but was made up of many different facts, which linked themselves together in a chain so strong as to convince the jury of her guilt under adequate instructions as to the degree of certainty to which their minds must be led before they could reach that result. Circumstantial evidence may be a thoroughly satisfactory basis for conviction of the highest crimes. Men commonly act in the most important concerns of life upon that kind of evidence. It is constantly applied in courts of justice, and has been commended by most eminent judges. *Com-*

*monwealth* v. *Webster*, 5 Cush. 295, 310 *et seq.* *Commonwealth*
v. *Williams*, 171 Mass. 461.    *Perovich* v. *United States*, 205
U. S. 86, 91.    It is not necessary to state in detail the circum-
stances which pointed to the guilt of this defendant.    They were
numerous, closely connected and might well have persuaded a
jury.    A minute analysis of the entire record shows that this
prayer was properly refused.    The chief argument urged in its
support is that it might have been found that others had an
opportunity, and that there were contradictions and inconsist-
encies in the testimony of witnesses called by the Common-
wealth, who were frequenting the house at about the time the
murder was committed.    These considerations could only affect
the weight of the evidence, and were proper for the jury to pass
upon.    They fall far short of impairing as matter of law
the controlling inferences which might be drawn from all the
circumstances.

9. Several other requests for instructions were presented.
They have not been argued by the defendant and they do
not require discussion one by one.    It is enough to say that
they were covered by the charge to the extent that they were
sound in law and necessary to the decision of the case.

10. A number of people were in the house of the defendant
during the period of time within which the decedent might have
met his death.    It was asserted that all of these persons had
been called as witnesses.    Commenting on this in the course of
his argument, the district attorney used this language:  " Is
there anybody in this case whose presence or absence is un-
accounted for, except the one party charged with the crime ?
My brother . . . urges upon you the utter futility of our put-
ting these people on the stand and asking them the pregnant
question, ' Did you kill Stewart MacTavish ?' . . . He utterly
failed to apprehend the significance of that question ; for every
person that was in that house that we could find — and he can-
didly and frankly says we have brought them all before you —
every person but one has told you under oath that they did not
kill Stewart MacTavish.    This is significant."    Objection was
made to this argument by counsel for the defendant, and the
judge stated,  " That will be taken care of in the charge."
Thereupon the district attorney proceeded :  " You have been

told that the defendant is not to be prejudiced because she did not take the stand. . . . That is the last thing in the world I shall ask of you — to infer anything from the fact that she did not take the stand. And what I have just said has no relation to that except the bare fact that everybody but she has testified under oath that they did not kill MacTavish." The defendant's counsel again addressed the court, asking that the argument be stopped. The district attorney proceeded : " If she has in her power or control any evidence which will explain where she was on Thursday night, if she has any friends that could come here and tell you where she was, and what she was doing, if she has any means whatever of putting before you any evidence showing where she was, and she fails to do it, we are entitled to call your attention to that failure, and you are entitled to use it as you see fit. . . . I am not asking you to infer anything from the fact that she did not take the stand. You have no right to do that. . . . But if she has within her possession or control any evidence to show that she is innocent; if she has such evidence that an innocent person would produce, I am entitled to call your attention to her failure to do so ; and you are entitled to consider it in this case."

The jury were instructed in the charge that although the defendant was permitted to testify in her own behalf at her own request, she was not obliged to do so, and her failure to do so did not create any presumption against her and should not prejudice her in any way. Accurate instructions were given as to inferences which might be drawn from the defendant's failure to call other witnesses whose evidence might tend to exonerate her. At the close of the charge the defendant's counsel asked a specific ruling that the district attorney had no right to make the argument above quoted, but the court refused to give it.

Under the federal Constitution and that of this Commonwealth, no person can be compelled in a criminal case to be a witness or furnish evidence against himself. U. S. Const.Amendm. art. 5. Declaration of Rights, art. 12. R. L. c. 175, § 20, cl. 3, provides that a defendant in any " criminal proceeding shall, at his own request, but not otherwise, be allowed to testify ; but his neglect or refusal to testify shall not create any presumption against him."

The fact that any defendant declines to avail himself of the

privilege of testifying conferred by the statute, cannot be permitted to create any presumption against him. Courts guard sedulously the constitutional and statutory rights of defendants in this respect. Attempts to infringe upon the privilege of silence thus secured to persons charged with crime are carefully checked. *Commonwealth* v. *Harlow,* 110 Mass. 411. *Commonwealth* v. *Maloney,* 113 Mass. 211. *Commonwealth* v. *Costley,* 118 Mass. 1, 27. *Commonwealth* v. *Scott,* 123 Mass. 239. *Commonwealth* v. *Finnerty,* 148 Mass. 162. *Commonwealth* v. *Smith,* 163 Mass. 411, 433. *Commonwealth* v. *Johnson,* 175 Mass. 152. Two different courses of dealing with cases, where there has been any infraction of this rule, appear to be followed by the courts of the several States. Some hold that any reference to the subject in argument must be presumed to do irreparable harm to the defendant, and that there must be a new trial granted unless by conduct or consent there has been a waiver of the right. The industry of the counsel for the defendant has collected a large number of such cases, leading ones being cited in a footnote.* It will be found on examination that most of these decisions rest on a statute which in express terms forbids any comment or reference to the fact in argument by either counsel. Some courts, which have adopted this rule, seem to be breaking away from it and following one less stringent. *Blume* v. *State,* 154 Ind. 343, 354, and cases cited.

Other courts hold that, where such reference has been made and is either withdrawn or is corrected by the charge of the court, then it does not constitute reversible error.†

---

\* *Austin* v. *People,* 102 Ill. 261. *State* v. *Balch,* 31 Kans. 465. *State* v. *Ryan,* 70 Iowa, 154. *Quinn* v. *People,* 123 Ill. 333, 346. *Hunt* v. *State,* 28 Tex. Cr. App. 149. *State* v. *Baldoser,* 88 Iowa, 55. *Yarbrough* v. *State,* 70 Miss. 593. *State* v. *Holmes,* 65 Minn. 230. *State* v. *Marceaux,* 50 La. 1137. *State* v. *Williams,* 11 So. Dak. 64. *Showalter* v. *State,* 84 Ind. 552. *State* v. *Payne,* 131 Mich. 474. *Jackson* v. *State,* 45 Fla. 38. *State* v. *Stoffels,* 89 Minn. 205. *State* v. *Snyder,* 182 Mo. 462, 523. *Barnard* v. *State,* 48 Tex. Cr. App. 111. *State* v. *Robinson,* 112 La. 939. *State* v. *Foley,* 24 Penn. Sup. Ct. 414. *Perkins* v. *Territory,* 17 Okla. 82. *Prince* v. *State,* 93 Miss. 263, 266.

† *Wilson* v. *United States,* 149 U. S. 60, 67. *People* v. *Hock,* 150 N. Y. 291, 304. *State* v. *Chisnel,* 36 W. Va. 659, 665. *Calkins* v. *State,* 18 Ohio St. 366. *State* v. *Buxton,* 79 Conn. 477. *O'Dell* v. *State,* 120 Ga. 152. *Minor* v. *State,* 120 Ga. 490. *Dunn* v. *State,* 118 Wis. 82. *People* v. *Hess,* 85 Mich. 128. *Petite* v. *State,* 8 Col. 518.

It is the general rule in trials of both criminal and civil causes that where an improper argument is addressed to a jury the attention of the judge should be called to it at once.   Unless it is a plain breach of propriety, the judge may in his discretion either direct the objectionable argument to end forthwith or permit it to proceed, but in any event the subject must be adequately covered in the charge with such emphasis as will correct any erroneous effect.   *Commonwealth* v. *Worcester*, 141 Mass. 58.   *Commonwealth* v. *Poisson*, 157 Mass. 510, 513.   *Commonwealth* v. *Peoples Express Co.* 201 Mass. 564, 580.   *Commonwealth* v. *Coughlin*, 182 Mass. 558, 563.   *Sayles* v. *Quinn*, 196 Mass. 492.   *O'Driscoll* v. *Lynn & Boston Railroad*, 180 Mass. 187, 190.   No sound reason appears why this rule of practice should not apply to unwarranted arguments by a district attorney, even in respect of a failure by a defendant to take the stand in his own behalf.   It is a matter of common knowledge that defendants may testify if they desire.   Where they do not take advantage of this privilege, frequently counsel for defendants refer to the statute and to the constitutional provisions, in order to explain conduct which might otherwise seem strange to the jurors.   While this does not open the door to the district attorney to reply, it shows that the subject itself is one which does not have an inherent tendency to harm a defendant.   The fact that a defendant has not testified cannot be banished from the observation of the jury, and it is proper that his counsel may suggest the reason for it.   It is always the duty of the judge to state the law touching the matter.

The argument of the district attorney inferentially called attention to the fact that the defendant had not testified; but it was a pertinent proposition for him to discuss that every person, so far as known, save her, who had been in such relation to the premises where the remains of the murdered man were found as to have had opportunity to commit the crime, had testified.   This was germane not for purpose of creating a presumption against the defendant by reason of her failure to testify, but to the end that the jury might consider the circumstance that everybody else, who could have done the deed, was accounted for, if the testimony was believed.   The immediate disclaimer of the district attorney of intent to urge any infer-

ences from her failure to testify, coupled with the plain instruction of the judge in the charge in accordance with the statute and decisions abundantly protected the rights of the defendant. It must be assumed that the jury understood and acted upon the directions given by the judge.  *Commonwealth* v. *Cunningham*, 104 Mass. 545.

*Exceptions overruled.*