OPINION OF THE JUSTICES TO THE SENATE.

*Constitutional Law*, Self-incrimination. *Evidence*, Failure to testify.

In reply to a legislative question, six of the justices expressed the opinion that a proposed amendment to G. L. (Ter. Ed.) c. 233, § 20, Third, which would include a provision in substance that, in specified circumstances, a judge presiding at a criminal trial might instruct the jury that they might take into consideration failure of the defendant to testify, would be unconstitutional because in violation of art. 12 of the Declaration of Rights. LUMMUS, J., expressed the opinion that such legislation would be constitutional.

On May 25, 1938, the Senate adopted the following order:

WHEREAS, There is pending before the Senate a bill entitled "An Act relative to the neglect or refusal to testify of an accused person in any criminal proceeding", printed as Senate document numbered five hundred and six, a copy whereof is hereto annexed; and

WHEREAS, Grave doubt exists as to whether said bill, if enacted into law, would be violative of the provisions

of the Constitution of the Commonwealth; therefore be it

ORDERED, That the opinions of the Honorable the Justices of the Supreme Judicial Court be required by the Senate on the following important question of law: —

Is it competent for the General Court to enact legislation, substantially as set forth in said bill, providing that under certain circumstances the neglect or refusal of a defendant in a criminal proceeding to testify may be made the subject of comment at his trial, notwithstanding the provisions of Article XII of Part the First of the Constitution of the Commonwealth?

Section 1 of the bill therein referred to reads as follows:

SECTION 1. Section twenty of chapter two hundred and thirty-three of the General Laws is hereby amended by striking out clause Third, as appearing in the Tercentenary Edition, and inserting in place thereof the following: —

Third, The defendant in the trial of an indictment, complaint or other criminal proceeding shall, at his own request, but not otherwise, be allowed to testify; but his neglect or refusal to testify shall not, except as hereinafter provided, be made the subject of any comment by the prosecution or by the court. If the defendant does not testify but introduces evidence tending to show reasons for his failure to testify, the prosecution may be permitted, in the court's discretion, to introduce evidence in rebuttal and to comment on the failure of the defendant to testify. If the counsel for a defendant who has failed to testify comments on such failure, the prosecution may be permitted, in the court's discretion, to comment thereon. If the defendant fails to testify and if the court is satisfied at the close of the evidence that it would be in the power of the defendant, if not guilty, truthfully to contradict by his testimony material evidence as to his guilt introduced by the prosecution, the court may in its discretion instruct the jury that, while the prosecu-

tion could not have called the defendant as a witness, he might have elected to be a witness in his own behalf and that in weighing the evidence it may take into consideration his failure to testify.

On May 26, 1938, the order was transmitted to the Justices, who, on June 6, 1938, returned the following answer:

To The Honorable the Senate of the Commonwealth of Massachusetts:

The Justices of the Supreme Judicial Court respectfully submit this answer to the question proposed in an order adopted on the twenty-fifth day of May, 1938, a copy whereof is hereto annexed.

It is provided by art. 12 of Part I of the Constitution of the Commonwealth that "No subject shall be . . . compelled to accuse, or furnish evidence against himself." Defendants in criminal causes could not be witnesses until the passage of St. 1866, c. 260. *Commonwealth* v. *Fortier*, 258 Mass. 98, 101.

It is said in *Commonwealth* v. *Mullen*, 97 Mass. 545, 546: "The statute which allows a defendant in a criminal case, at his own request and not otherwise, to testify in his own behalf, (St. 1866, c. 260,) expressly provides that 'he shall be deemed a competent witness'; that is, competent not for a special purpose, or to give evidence only which shall operate in his own favor, but competent to testify to any facts relevant and material to the issue. Like all other witnesses, he is to tell the truth and the whole truth concerning any matter proper to be inquired about. If he offers himself as a witness, he waives his constitutional privilege of refusing to furnish evidence against himself, and may be interrogated as a general witness in the cause." (St. 1866, c. 260, was repealed by St. 1870, c. 393, § 5, and a new statute was enacted by § 1, cl. Third, in substantially the form now found in G. L. [Ter. Ed.] c. 233, § 20, cl. Third.)

In *Commonwealth* v. *Harlow*, 110 Mass. 411, it is said:

"The St. of 1870, c. 393, § 1, which makes defendants who are charged with crimes and offences competent witnesses, provides that their neglect or refusal to testify shall not create any presumption against them. This provision conforms to Article 12 of the Declaration of Rights, which declares that no subject shall be compelled to furnish evidence against himself. Since this class of defendants are allowed to testify if they will, there is some danger that if one exercises his right of silence, the jury will look upon it as a proper matter to weigh against him in considering the question of his guilt. It is important that courts should carefully guard his constitutional right."

In *Commonwealth* v. *Maloney*, 113 Mass. 211, at 214, referring to the same statute, it was said: "The statute is explicit; and the exemption should be scrupulously secured to the defendant. . . . It is doubtless intended to carry out the spirit and purpose of the clause in the Declaration of Rights, that no subject shall 'be compelled to accuse or furnish evidence against himself.' A bare literal compliance with the terms of this provision is not all that a defendant is entitled to." *Commonwealth* v. *Nichols*, 114 Mass. 285, 287. *Emery's Case*, 107 Mass. 172.

It was in substance declared in *Commonwealth* v. *Scott*, 123 Mass. 239, 240–241, that that clause of the Constitution embodied an ancient rule of the common law. Under our system of jurisprudence the government has no right to interrogate a person accused of crime or to compel him to testify, but must sustain its charge by independent evidence. The accused has the right simply to deny his guilt, and to rely upon the legal presumption of his innocence until he is proved to be guilty. "The statutes allowing persons charged with the commission of crimes or offences to testify in their own behalf were passed for their benefit and protection, and clearly recognize their constitutional privilege, by providing that their neglect or refusal to testify shall not create any presumption against them. Sts. 1866, c. 260; 1870, c. 393, § 1, cl. 3. And this court has decided that such silence cannot be taken into consideration by the

jury in determining whether a defendant is or is not guilty, and that an equivocal instruction upon this matter entitles the defendant to a new trial; Chief Justice Chapman saying, 'It is important that courts should carefully guard his constitutional right.' *Commonwealth* v. *Harlow*, 110 Mass. 411." *Phillips* v. *Chase*, 201 Mass. 444, 450. *Commonwealth* v. *Finnerty*, 148 Mass. 162, 166. *Commonwealth* v. *Richmond*, 207 Mass. 240, 248. *Commonwealth* v. *Farmer*, 218 Mass. 507, 514. *Attorney General* v. *Pelletier*, 240 Mass. 264, 316. *Commonwealth* v. *Hanley*, 140 Mass. 457.

It was held in *Commonwealth* v. *Clark*, 14 Gray, 367, 373, that the omission of the defendant to produce a witness other than himself, to meet and explain evidence tending to prove his guilt, was proper for the consideration of the jury. In *Commonwealth* v. *Smith*, 163 Mass. 411, 430, in dealing with the statute which provides that neglect or refusal to testify shall not create any presumption against the defendant, it was said: "But it may be assumed that the provision of the Constitution [art. 12] needs no statute to reinforce it in this particular, and that the refusal to testify before the grand jury could create no presumption against the defendants, whether the above statute applies or not. This means, no presumption upon which a legal judgment or consequence could rest. . . . The protection afforded by the Constitution is that the individual shall not be prejudiced at law by his silence, if he keeps silent."

The decisions already cited indicate a trend of opinion that that protection against an inference or presumption from the silence of a defendant in a criminal prosecution is constitutional and not merely statutory. We think that this is the position taken in 4 Wigmore on Evidence (2d ed.) § 2272. It was said in *Twining* v. *New Jersey*, 211 U. S. 78, 91: "The exemption from testimonial compulsion, that is, from disclosure as a witness of evidence against oneself, forced by any form of legal process, is universal in American law, though there may be differences as to its exact scope and limits. At the time of the formation of the Union the principle that no person could be compelled to be a witness

against himself had become embodied in the common law and distinguished it from all other systems of jurisprudence. It was generally regarded then, as now, as a privilege of great value, a protection to the innocent though a shelter to the guilty, and a safeguard against heedless, unfounded or tyrannical prosecutions."

The present statute, G. L. (Ter. Ed.) c. 233, § 20, cl. Third, is in these words: "Third, The defendant in the trial of an indictment, complaint or other criminal proceeding shall, at his own request, but not otherwise, be allowed to testify; but his neglect or refusal to testify shall not create any presumption against him." In view of the number of decisions dealing with that clause, there is no doubt touching its constitutionality.

We are of opinion that the final sentence of clause "Third" in § 1 of the proposed bill, being lines nineteen to twenty-nine, contains unconstitutional provisions. The protection of art. 12 is that "No subject shall be . . . compelled to accuse, or furnish evidence against himself." That shield is positive and unequivocal. It is subject to no condition. It rests wholly upon the volition of the defendant whether he shall fail to interpose it, or not. The last sentence of the proposed bill is not positive and unequivocal. Whether a defendant may, under the proposed bill if enacted, avail himself of that positive protection, or not, depends upon the preliminary determination by the judge of the fact whether it is in the power of the defendant, if not guilty, truthfully to contradict by his testimony material evidence as to his guilt introduced by the prosecution, and upon the further exercise of discretion by the trial judge to give instructions touching the subject. This procedure cuts down the positive protection given by the Constitution and renders it conditional and subject to limitations. That which was before certain, clear and indubitable has become contingent, clouded and ambiguous. Positive rights secured to individuals by the Constitution cannot be thus circumscribed and rendered doubtful.

This conclusion is supported by *State* v. *Wolfe*, 64 S. D.

178, 184, 188. *Minters* v. *People*, 139 Ill. 363. *People* v. *Tyler*, 36 Cal. 522.

It becomes unnecessary to discuss the other provisions of the proposed bill.

The question proposed in the order is answered "No."

ARTHUR P. RUGG.
FRED T. FIELD.
CHARLES H. DONAHUE.
STANLEY E. QUA.
ARTHUR W. DOLAN.
LOUIS S. COX.

To The Honorable the Senate of the Commonwealth of Massachusetts:

The constitutional validity of Senate Bill 506 depends upon the meaning which certain words bore in 1780, when they were included in our Declaration of Rights. Mass. Const. Part I, art. 12. The words are: "No subject shall . . . be compelled to accuse, or furnish evidence against himself." Nothing in the Federal Constitution applies. *Twining* v. *New Jersey*, 211 U. S. 78. In construing our constitutional provision, its historical setting is of the first importance.

No one in 1780 could foresee that criminal defendants, almost a century later, would be given the right to testify. St. 1866, c. 260. St. 1870, c. 393, § 1. G. L. (Ter. Ed.) c. 233, § 20 (3). Criminal evidence act, St. 61 & 62 Vict. c. 36. Taylor, Evid. (11th ed. 1920) § 1372 A.*

The evil against which the words in question were directed was experienced most recently and strikingly during the reign of Charles I. See 4 Wigmore, Evid. (2d ed.) § 2250, II, 3, 4, and notes 107, 112. In part it resulted from the denial, to a person accused of felony, of the assistance of counsel. Although in Massachusetts the right to counsel

---

* For the anomalous right to make an unsworn statement — a survival from the time when an accused could not testify — see *Commonwealth* v. *Stewart*, 255 Mass. 9; St. 61 & 62 Vict. c. 36, § 1 (h); *Rex* v. *Dunn*, 91 L. J. N. S. (K. B.) 863; 1 Wigmore, Evid. (2d ed.) § 579.

was established in 1780 by the very article under discussion (*Commonwealth* v. *Stewart*, 255 Mass. 9, 16), and may have been recognized earlier (St. 1697, c. 9, § 11), in England counsel were first allowed in trials for treason in 1695 (St. 7 Wm. III, c. 3, § 1), came to play minor parts in other trials, and were admitted to defend in felonies generally in 1836 by St. 6 & 7 Wm. IV, c. 114, § 1. 9 Holdsworth, Hist. Eng. Law (1926), 235. Modern judges who have heard criminal defendants conduct their cases without the aid of counsel know that their efforts often result in a jumble of cross-examination, unsworn assertion, and argument upon the evidence. In the early seventeenth century and before, a criminal trial was in great part a protracted wrangle between counsel for the prosecution and the defendant. This is vividly portrayed by Stephen (1 Hist. Crim. Law, 325, 326), quoted in *Twining* v. *New Jersey*, 211 U. S. 78, 103. See also 9 Holdsworth, Hist. Eng. Law (1926), 225–235.

The almost inevitable furnishing of evidence by a criminal defendant conducting his own defence at a time when the law of evidence was in its infancy, was aggravated by the adoption of the inquisitorial system which became the accepted practice of the Court of Star Chamber in criminal cases. 4 Wigmore, Evid. (2d ed.) § 2250, I, 2 (b), page 806. Stephen says (1 Hist. Crim. Law, 342), "In the old Ecclesiastical Courts and in the Star Chamber it [the *ex officio* oath, to make true answers to all questions] was understood to be, and was, used as an oath to speak the truth on the matters objected against the defendant — an oath, in short to accuse oneself." The controversy over this oath reached its peak in *Lilburn's Trial*, 3 How. St. Tr. 1315, in 1637. As a result, in 1641 the Court of Star Chamber was abolished, and the use of such an oath in penal cases was forbidden. St. 16 Car. I, cc. 10, 11. 4 Wigmore, Evid. (2d ed.) § 2250, I, 3, page 808.

That controversy had its effect upon the common law courts, in which until about 1640 confessions induced by torture were constantly accepted as evidence (2 Wigmore, Evid. [2d ed.] § 818 [3]; 5 Holdsworth, Hist. Eng. Law

[1924], 185–187), and accused persons were compelled to submit to an examination before trial, the results of which were put in evidence. 4 Wigmore, Evid. (2d ed.) § 2250, II, 1, 2. Authorities are collected in 30 Mich. Law Rev. (June, 1932) 1224, 1231 *et seq.* During the time of Charles II, the general privilege against self-crimination became established, and "the extension of the privilege to include an ordinary witness, and not merely the party charged, is for the first time made." 4 Wigmore, Evid. (2d ed.) § 2250, II, 3. *Emery's Case,* 107 Mass. 172, 181.

From history we may turn to decisions. In England the privilege as expressed in our Declaration of Rights has been part of the common law for centuries. When a criminal defendant was given the right to testify in all cases by St. 61 & 62 Vict. c. 36, it was provided that his failure "to give evidence shall not be made the subject of any comment by the prosecution." But it is held that the judge may tell the jury that they may draw an inference against the accused from his failure to testify in denial or explanation. *Kops* v. *The Queen,* (1894) A. C. 650. *The Queen* v. *Rhodes,* (1899) 1 Q. B. 77. *Rex* v. *Smith,* 84 L. J. N. S. (K. B.) 2153, 2157. In New Jersey, although no constitutional provision exists, the substance of our constitutional provision against self-crimination is part of the common law of the State. *State* v. *Zdanowicz,* 69 N. J. L. 619, 622. *State* v. *Miller,* 71 N. J. L. 527, 532. Yet the failure of a criminal defendant to exercise his statutory right to testify has been held in many cases, of which only a few are cited, to give rise to an inference against him. *Parker* v. *State,* 61 N. J. L. 308, affirmed 62 N. J. L. 801. *State* v. *Twining,* 73 N. J. L. 683, affirmed in *Twining* v. *New Jersey,* 211 U. S. 78. *State* v. *Lennon,* 107 N. J. L. 94. *State* v. *Gimbel,* 107 N. J. L. 235. The case of *State* v. *Stennett,* 220 Iowa, 388, 395, 396, appears to be similar. The scope of the common law privilege is not broadened by being incorporated in a constitution. In Maine, under a constitutional provision (Maine Decl. of Rights, § 6) that an accused "shall not be compelled to furnish or give evidence against himself," it was held, until a statute (Maine St. 1879, c. 92) changed the law, that an in-

ference might be drawn against him from his failure to testify. *State v. Bartlett*, 55 Maine, 200, 216–221. *State v. Lawrence*, 57 Maine, 574. *State v. Cleaves*, 59 Maine, 298. Similar decisions have been made in Connecticut (*State v. Colonese*, 108 Conn. 454; *State v. Ford*, 109 Conn. 490; *State v. Heno*, 119 Conn. 29, 94 Am. L. R. 696), under a constitutional provision that "the accused . . . shall not be compelled to give evidence against himself." Conn. Decl. of Rights, § 9.

There are no decisions in this Commonwealth, for from the moment when a criminal defendant was allowed to testify there has existed a statutory provision that his neglect or refusal to testify shall not create any presumption (i.e. inference) against him. St. 1866, c. 260. St. 1870, c. 393, § 1. G. L. (Ter. Ed.) c. 233, § 20 (3). Whatever intimations may be found in our cases can at best rise no higher than *dicta*. *Commonwealth v. Harlow*, 110 Mass. 411. *Commonwealth v. Maloney*, 113 Mass. 211. *Commonwealth v. Nichols*, 114 Mass. 285. *Commonwealth v. Scott*, 123 Mass. 239. *Commonwealth v. Finnerty*, 148 Mass. 162, 166, 167. *Commonwealth v. Smith*, 163 Mass. 411, 430. *Commonwealth v. Richmond*, 207 Mass. 240, 249. *Commonwealth v. Farmer*, 218 Mass. 507, 514. *Attorney General v. Pelletier*, 240 Mass. 264, 316. In most of these cases there is nothing strong enough to be called a *dictum*. But in *Phillips v. Chase*, 201 Mass. 444, 450, it was said, "If evidence is material and competent except for a personal privilege of one of the parties to have it excluded under the law, his claim of the privilege may be referred to in argument and considered by the jury, as indicating his opinion that the evidence, if received, would be prejudicial to him. This is the rule . . . in the absence of a statutory provision to the contrary, where the party charged with a crime, who has a legal right to testify in his own behalf, fails to take the witness stand." This, too, was *dictum*. But it was said, after evident research and consideration, by one of the greatest of our chief justices.

It may be said that the proposed bill would put the accused in a dilemma. But that is not the sort of compul-

sion against which the constitutional provision was aimed. Neither is subjecting the accused to an inference if he does not testify, the sort of self-accusation or self-crimination meant. The history of the privilege, and the weight of authority, show that the constitutional provision was directed against torture, force, and the inquisitorial practices of past centuries. It has no concern with tactical refinements.

If our constitutional provision is to be interpreted in accordance with the opinion of the majority of the Justices, the question may deserve consideration whether it does not preclude the drawing of an inference against a criminal defendant because of his failure to call witnesses other than himself to explain incriminating circumstances (*Commonwealth* v. *Finnerty*, 148 Mass. 162; *Commonwealth* v. *Goldstein*, 180 Mass. 374; *Commonwealth* v. *Peoples Express Co.* 201 Mass. 564, 581), and the drawing of an inference against a party to a civil case, who has not waived his privilege against self-crimination, because of his claim of that privilege. See *Andrews* v. *Frye*, 104 Mass. 234; *Commonwealth* v. *Nichols*, 114 Mass. 285, 287; *Attorney General* v. *Pelletier*, 240 Mass. 264, 316, 317; *Bartlett* v. *Lewis*, 12 C. B. (N. S.) 249, 260, 261. Certainly, the opinion of the majority of the Justices deprives the words of the present statute, that "his neglect or refusal to testify shall not create any presumption against him," of all effect, and makes them unnecessary.

In the opinion of the undersigned, the question should be answered "Yes."

HENRY T. LUMMUS.