COMMONWEALTH *vs.* LEONARD J. PARADISO.

Essex.    May 5, 1975. — June 20, 1975.

Present: TAURO, C.J., REARDON, QUIRICO, KAPLAN, & WILKINS, JJ.

*Evidence,* Evidence at preliminary hearing.    *Error,* Whether error harmful.    *Practice, Criminal,* Mistrial.    *Constitutional Law,* Self-incrimination.

G. L. c. 278, § 23, does not mandate that whenever it is violated in a criminal case the judge must grant a mistrial or a new trial. [209-210]

G. L. c. 278, § 23, permits a conclusion that a violation thereof is error harmless beyond a reasonable doubt.   [210-213]

INDICTMENTS found and returned in the Superior Court on May 23, 1974.

The cases were tried before *Abrams,* J., and questions of law were reported by her to the Appeals Court.   The Supreme Judicial Court, on its own initiative, ordered direct review.

The case was submitted on briefs.

*Harvey Brower* for the defendant.

*Michael T. Stella, Jr.,* Assistant District Attorney, for the Commonwealth.

QUIRICO, J.    After a single trial in which the defendant was found guilty by a jury of the crimes of assault and battery and assault with intent to rape, a judge of the Superior Court imposed on the defendant a fine of $10 for the lesser crime and a sentence of six to fifteen years to the Massachusetts Correctional Institution at Walpole for the greater crime.    The judge then stayed the execution of the sentences and with the consent of the defendant reported both cases to the Appeals Court under

G. L. c. 278, § 30,[1] requesting answers to the follow-
ing questions: "1) Must a court, in order to comply with
the terms of G. L. c. 278, § 23, grant a mistrial or a new
trial in order to provide a reasonable sanction for viola-
tion of G. L. c. 278, § 23? 2) May a violation of G. L.
c. 278, § 23 be held to be error which is harmless beyond
reasonable doubt?" After the report was entered in the
Appeals Court we caused it to be transferred to this court
under the provisions of G. L. c. 211A, § 10 (A), inserted
by St. 1972, c. 740, § 1.

We read the first question reported as asking whether
G. L. c. 278, § 23, mandates that in any case where its
provisions are violated the judge must grant a mistrial or
a new trial, and as thus read we answer "No." We read
the second question reported as asking whether the
statute permits a conclusion that a violation of its pro-
visions is harmless error beyond a reasonable doubt, and
as thus read we answer "Yes."

General Laws c. 278, § 23, provides: "At the trial of a
criminal case in the superior court, upon indictment or
appeal, the fact that the defendant did not testify at the
preliminary hearing or trial in the lower court, or that at
such hearing or trial he waived examination or did not
offer any evidence in his own defence, shall not be used
as evidence against him, nor be referred to or commented
upon by the prosecuting officer."

There was an abundance of evidence which, if be-
lieved, provided overwhelming proof of the defendant's
guilt on both crimes. A young lady (the victim) testified
that the defendant offered her a ride from Boston to her
home in Andover on the evening of September 28, 1973.

---

[1] Section 30 provides: "If, upon the trial of a person convicted in
the superior court, a question of law arises, which, in the opinion of
the presiding justice, is so important or doubtful as to require the
decision of the supreme judicial court, he shall, if the defendant
desires or consents to it, report the case so far as necessary to present
the question of law arising therein; and thereupon the case shall be
continued to await the decision of the supreme judicial court."

Instead of taking her home he drove her to an isolated unlighted place on a dirt road in Andover, and there he assaulted and beat her and attempted to rape her. Two police officers who came on the scene saw the victim, who was bleeding from both sides of her mouth, run toward their cruiser asking them to get her out of there and to keep the defendant away from her. The officers saw the defendant zipping and fastening his trousers and his trouser belt. The victim testified that the defendant had first assaulted her in the car, that in the ensuing struggle she got out of the car, that the defendant then threw her to the ground, kicked her along her back and shoulders, fell upon her, started to choke her with both of his hands, threatened to kill her, and hit her several times about the face. Examination of the victim at a hospital that evening disclosed that she had multiple contusions of the face and neck, throat, spine and ribs. Traces of blood were found on the clothing of the defendant and of the victim; and traces of human seminal fluid residue containing sperm cells were discovered on a portion of the victim's clothing.

The defendant testified that shortly before the arrival of the police he had turned into the dirt road to relieve himself, stopped about two car lengths down the road, and saw the victim, bleeding from the mouth, lying on the side of the road; that he placed her in his car to take her to a hospital or police station, and then instead of backing out of the dirt road he went forward about 460 feet to the spot where the police later found him and the victim; and that the victim left his car and he followed her. The police testified that the defendant told them he had found the victim in her injured condition and that she had told him that "she was beaten and robbed by two kids." The victim denied this, stating to him in the presence of the police officers, "You tried to kill me."

In addition to the above, the defendant also presented evidence of an alibi. He testified that until a short time before the arrival of the police he had been in a Lawrence

drinking establishment with a woman whom he identified and who testified in his behalf. She testified that the defendant was with her during the entire evening up to the time he left the establishment, and she even gave the name of the waitress who had served them. The waitress, called as a witness in rebuttal, denied seeing the defendant or the woman in the establishment on the evening of the crime.

The jury obviously disbelieved all or almost all of the defendant's own testimony, and all of the testimony of his alibi witness. The judge's report properly states: "There is no question raised as to the sufficiency of the evidence."

During his cross-examination of the defendant's alibi witness the prosecutor asked her: "Did you testify in district court at the probable cause hearing?" On objection by the defendant, the judge excluded the question, which had not been answered. The defendant moved for a mistrial and the judge apparently denied the motion, although the record does not so state. The judge instead immediately gave the jury cautionary instructions which are reproduced in the margin of this opinion.[2] The

---

[2] "I have excluded the question. It is not to be considered by you. It is not part of the case. I remind you again what I told you earlier, that in this Commonwealth and in this country, the burden always remains upon the Commonwealth to prove a defendant guilty beyond a reasonable doubt. And the defendant is under no obligation to present evidence of his innocence. The burden remains upon the Commonwealth at all times to prove a defendant guilty beyond a reasonable doubt. During the trial, it is the lawyer's obligation to defend his client or to prosecute a case to the best of his ability; and there have been a lot of objections and exceptions and matters have been stricken. All of that is the law's way of providing an orderly trial. But I remind you that the only thing which you are to consider are the questions asked and answered, the testimony that you hear in this courtroom, the exhibits, and your observation of the witnesses as they testify. You are to take no other matters into consideration. The fact that the lawyers object or that matters are objected to and excluded is no part of your fact-finding function.

"Questions asked and excluded are not matters on which you can speculate or wonder about the answer, nor can you draw any infer-

defendant objected and excepted to the giving of the cautionary instructions on the grounds first, that G. L. c. 278, § 23, was mandatory in its terms, and second, that no cautionary instruction could cure the harm occasioned by the asking of the question. There was no objection or exception to the actual wording of the instructions. Nor were any additional instructions requested. No objection or exception was taken to the charge, which reiterated the principles in the cautionary instructions several times. After the verdicts, the defendant again moved for a mistrial or, in the alternative, a new trial. The record does not indicate whether the judge has ruled on the motion.

The foregoing statement of the basic facts of these cases is taken from the judge's report, which in turn incorporated therein a "Narrative Statement of Facts" signed by counsel for both parties. The statement of facts, while not indispensable to this opinion, helps us to understand the background of the questions of law reported to us for decision.

1. The first question asks, in effect, whether G. L. c. 278, § 23, mandates that in any case where its provisions are violated the court must order either a mistrial or a new trial. We rule that there is no such mandate in the statute. We do so without deciding or implying that there has been any violation of the statute in these cases. Here a question was asked which, if answered in the negative, might have constituted a violation of the statute,[3] but the question was never answered. The situ-

---

ence one way or the other . . . . With that I would ask you to remember that it is sworn testimony and the exhibits you are to consider and not the mechanics of the trial."

[3] There is no suggestion in the record before us that the question thus asked and excluded was a preliminary step in an attempt to impeach the witness by showing that she had previously testified differently in a District Court. We assume that she had not previously testified in the latter court.

ation is therefore much different from that in *Commonwealth* v. *Morrison*, 1 Mass. App. Ct. 632, 635-636 (1973), relied on by the defendant, where each defense witness at the trial in the Superior Court was cross-examined about his presence at the probable cause hearing in a District Court and about the fact that he had not testified in the latter court.

We hold that whenever there is a violation of G. L. c. 278, § 23, by reason of the use against a defendant at a trial in the Superior Court of the fact that he did not testify at the preliminary hearing in the District Court, or the fact that at such hearing he waived examination or did not offer any evidence in his own defense, the judge presiding at the trial has discretion to determine what action, if any, is necessary or appropriate to protect the rights of the defendant. By reason of his position the judge is the person best able to make that determination, at least in the first instance, on the basis of particular circumstances of the case on trial. He may order a mistrial, or he may take other action, including the giving of cautionary instructions to the jury as was done in this case. Whatever his decision may be in the matter, absent a showing that he abused his discretion and that a miscarriage of justice may have resulted, an appellate court will not substitute its judgment for his. *Commonwealth* v. *Domanski*, 332 Mass. 66, 69, 71 (1954). *Commonwealth* v. *D'Ambra*, 357 Mass. 260, 262 (1970). See *Commonwealth* v. *Nordstrom*, 364 Mass. 310, 313 (1973).

2. The second question asks whether "a violation of G. L. c. 278, § 23 [may] be held to be error which is harmless beyond reasonable doubt." There is nothing in the law of this Commonwealth, whether statutory or otherwise, which precludes a holding, in appropriate circumstances, that the violation, if any, of G. L. c. 278, § 23, is harmless error beyond a reasonable doubt.

Although the question reported is phrased in language referring only to the statute (G. L. c. 278, § 23), it may

suggest the implication of Federal constitutional questions. The cited statute must be read in conjunction with G. L. c. 233, § 20, Third, which reads as follows: "The defendant in the trial of an indictment, complaint or other criminal proceeding shall, at his own request, but not otherwise, be allowed to testify; *but his neglect or refusal to testify shall not create any presumption against him*" (emphasis supplied). Both statutes, in turn, must be read in conjunction with art. 12 of the Declaration of Rights of the Constitution of the Commonwealth to the effect that: "No subject shall be . . . compelled to accuse, or furnish evidence against himself," and with the Fifth Amendment to the Constitution of the United States, made applicable to the States by the Fourteenth Amendment (*Malloy* v. *Hogan*, 378 U. S. 1, 8 [1964]) to the effect that: "No person shall be . . . compelled in any criminal case to be a witness against himself." It has been held in several decisions of this court that the basis of the right of a criminal defendant to remain silent and to insist that no presumption be drawn against him by reason of his silence is constitutional. *Commonwealth* v. *Harlow*, 110 Mass. 411 (1872). *Commonwealth* v. *Maloney*, 113 Mass. 211, 214 (1873). *Commonwealth* v. *Scott*, 123 Mass. 239, 240-241 (1877). In *Commonwealth* v. *Smith*, 163 Mass. 411, 430 (1895), this court said, in relation to the statute which is now G. L. c. 233, § 20, Third: "But it may be assumed that the provision of the Constitution [art. 12 of the Declaration of Rights] needs no statute to reinforce it in this particular, and that the refusal to testify before the grand jury could create no presumption against the defendants, whether the above statute applies or not. . . . The protection afforded by the Constitution is that the individual shall not be prejudiced at law by his silence, if he keeps silent." In *Opinion of the Justices*, 300 Mass. 620 (1938), the Justices of this court expressed the opinion that a proposed amendment to G. L. c. 233, § 20, to permit the prosecution, in certain circumstances, to comment on a criminal defendant's

failure to testify, would violate art. 12 of the Declaration of Rights.

In *Griffin* v. *California*, 380 U. S. 609 (1965), the court held that a California statute which permitted the prosecutor to comment to the jury on the defendant's failure to testify at his trial, and permitted the judge to instruct the jury that under certain circumstances that failure may permit the jury to draw inferences unfavorable to the defendant, violated the Fifth Amendment to the Constitution of the United States. The court said, p. 615: "We . . . hold that the Fifth Amendment, in its direct application to the Federal Government, and in its bearing on the States by reason of the Fourteenth Amendment, forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt."

In *Chapman* v. *California*, 386 U. S. 18 (1967), several defendants had been tried and convicted in the State courts of California, in a trial in which the prosecutor commented and the judge instructed the jury on the defendants' failure to testify, much as had been done in the *Griffin* case. The trial was completed shortly before the date of the *Griffin* decision cited above, while the appeal reached the California Supreme Court after that date. The California court affirmed the convictions (in 63 Cal. 2d 178 [1965]), after acknowledging the violation of the defendants' Federal constitutional rights under the *Griffin* decision, by "applying the State Constitution's harmless-error provision, which forbids reversal unless 'the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice.'" *Chapman* v. *California, supra,* at 20.

The United States Supreme Court granted certiorari in the *Chapman* case on the following questions (386 U. S. at 20 [1967]): "'Where there is a violation of the rule of *Griffin* v. *California*, 380 U. S. 609 [1965], (1) can the error be held to be harmless, and (2) if so, was the error harmless in this case?'" quoting from the order granting

the petition for a writ of certiorari, 383 U. S. 956-957 (1966). The first question quoted above is strikingly similar to the second question reported for our answer in the present cases.

In the *Chapman* case the court reasoned as follows (pp. 21-24): "We are urged by petitioners to hold that all federal constitutional errors, regardless of the facts and circumstances, must always be deemed harmful. Such a holding, as petitioners correctly point out, would require an automatic reversal of their convictions and make further discussion unnecessary. We decline to adopt any such rule. . . . We conclude that there may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not requiring the automatic reversal of the conviction. . . . [W]e hold . . . that before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt."

We further answer the second question reported to us by paraphrasing the language of the *Chapman* case to the effect that a violation of G. L. c. 278, § 23, or of G. L. c. 233, § 20, Third, or of the several provisions of the Massachusetts and United States Constitutions quoted above can be held harmless if the court is able to conclude that it was harmless beyond a reasonable doubt.[4]

We are not asked whether the error, if any, in this case was harmless error beyond a reasonable doubt. That is a question which must initially be answered by the trial

---

[4] The words "harmless beyond a reasonable doubt" are used in the *Chapman* decision in relation to a violation of a constitutional right. We use these words in this answer because they are included in the second question reported to us, but their use by us is not intended to be a decision that every violation of G. L. c. 278, § 23, necessarily amounts to a violation of a constitutional right.

judge if she concludes that a statutory or constitutional violation occurred.

In conclusion, we answer the first reported question in the negative, and the second reported question in the affirmative.

*So ordered.*